JOSEPH P. WOHRLE, ESQ. (STATE BAR NO. 143,550)
E-mail: jwohrle@allenwohrle.com
JEFFREY F. ALLEN, ESQ. (STATE BAR NO. 204,042)
E-mail: jallen@allenwohrle.com
ALLEN + WOHRLE, LLP
2800 28th STREET, SUITE 321
SANTA MONICA, CA 0405
Telephone: (310) 392-3355
Facsimile: (310) 392-8059

DIMITRIOS P. BILLER, (STATE BAR No. 142,730)
E-mail: biller_ldtconsulting@verizon.net
906 KAGAWA STREET
PACIFIC PALISADES, CA 90272
Telephone: (310) 459-9870
Facsimile: (310) 459-9879

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIOS P. BILLER, LITIGATION DISCOVERY & TRIAL CONSULTING,INC., a California corporation,<br><br>       Plaintiffs,<br><br>  v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD MARTIN, ERIC TAIRA, DIAN OGILVIE, ALICIA McANDREWS,<br><br>      Defendants. | Case No.: CV09-5429-CAS-(JEMx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE EX PARTE APPLICATION TO SEAL PLAINTIFFS' COMPLAINT<br><br>**BEFORE THE HONORABLE CHRISTINA A. SNYDER** |

# **TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES

MEMORANDUM OF POINTS AND AUTHORITIES

    I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . 2

    II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . 5

         A.   Ongoing Litigation Between Biller and TMS. . . .5

         B.   TMS's Interference with BILLER'S Pending Federal
              Action Against the County of Los Angeles. . . . 7

    III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . 10

        A. TMS has failed to show "good cause" to seal the
           complaint; the balancing factors favor Plaintiffs.10

        B. The interests of the public clearly outweigh any
           possible harm to TMS. . . . . . . . . . . . . . 13

        C. Plaintiffs' complaint is based on allegations,
           facts, events and transactions that occurred after
           BILLER resigned. . . . . . . . . . . . . . . . 15

        D. TMS has failed to meet its burden of proving that
           the attorney-client privilege applies to any
           portions of the complaint . . . . . . . . . . . 17

        E. Even if there are privileged communications, the
           crime/fraud exception applies. . . . . . . . . .20

        F. Business & Professions Code Section 6068(e) is
           Trumped by the California Evidence Code exceptions
           to the attorney-client privilege . . . . . . . 22

        G. TMS eviscerated the attorney-client privilege by
           filing TMS v. BILLER . . . . . . . . . . . . . 22

        H. Any and all information that BILLER created belongs
           to him as the holder of the Attorney-Work Product
           Privilege . . . . . . . . . . . . . . . . . . . 23

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES**

PAGE(S)

**FEDERAL CASES**

Cipollone v. Liggett Group, Inc.
785 F.2d 1108 (3d Cir. 1986) . . . . . . . . . . . . . 10

Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.
178 F.3d 943 (7th Cir. 1999)  . . . . . . . . . . . . 4, 13

Clark v. United States
289 U.S. 1 (1933) . . . . . . . . . . . . . . . . . . 20

Gray v. First Winthrop Corp.
133 F.R.D. 29 (N.D.Ca. 1990) . . . . . . . . . . . 10

Marc Rich & Co. v. United States
731 F.2d 1032 (2nd Cir. 1984) . . . . . . . . . . . . 20

Pansy v. Borough of Stroudsburg
23 F. 3d 772 (3rd Cir. 1994) . . . . . . . . . . . 4, 10, 11

Publicker Indus., Inc. v. Cohen
733 F.2d 1059 (3rd Cir. 1984) . . . . . . . . . . . . . 10


**CALIFORNIA STATE CASES**

Aerojet-General Corp. v. Transport Indemnity Insurance
(1993) 18 Cal.App.4th 996. . . . . . . . . . . . . . . 18

BP Alaska Exploration, Inc. v. Superior Court
(1998) 199 Cal.App.3d 1262 . . . . . . . . . . . . 18, 21, 23

Coy v. Superior Court
(1962) 58 Cal.2d 210 . . . . . . . . . . . . . . . 19

Fox Searchlight Pictures, Inc. v. Gia Paladino
(2001) 89 Cal.App.4th 294. . . . . . . . . . . . . . 22

General Dynamics v. Superior Court
(1994) 7 Cal.4th 1164. . . . . . . . . . . . . 19, 20, 21

Glade v. Superior Court
(1978) 76 Cal.App.3d 738. . . . . . . . . . . . . . . 20

Holm v. Superior Court
(1954) 42 Cal.2d 500. . . . . . . . . . . . . . . . . . . . 18

Laskey, Haas, Cohler & Munter v. Superior Court
(1985) 172 Cal.App.3d 264 . . . . . . . . . . . . . . . . . 23

Mahoney v. Superior Court
(1983) 142 Cal.App.3d 937 . . . . . . . . . . . . . . . . . 17

People v. Lee
(1970) 3 Cal.App.3d 514 . . . . . . . . . . . . . . . . 18, 19

People v. Pic'l
(1981) 114 Cal.App.3d 824 . . . . . . . . . . . . . . . . . 20

Savagio v. Wal-Mart Stores, Inc.
(2007) 149 Cal.App.4th 568 . . . . . . . . . . . . . . . . 16

S.F. Unified Sch. Dist. V. Superior Court
(1961) 55 Cal.2d 451. . . . . . . . . . . . . . . . . . . . 18

State Farm and Casualty Company v. Superior Court
(1997) 54 Cal.App.4th 625 (1997)  . . . . . . . . 13, 18, 19, 21

Suezaki v. Superior Court
(1962) 58 Cal.2d 166. . . . . . . . . . . . . . . . . . . . 18


**BUSINESS & PROFESSIONS CODE**

Sec. 6068(e)(1). . . . . . . . . . . . . . . . . . . 4, 5, 22

**EVIDENCE CODE**

Sec. 917. . . . . . . . . . . . . . . . . . . . . . . . . 17
Sec. 956 . . . . . . . . . . . . . . . . . . . . . . 5, 20, 21
Sec. 958 . . . . . . . . . . . . . . . . . . . . . . 5, 20, 23

**CALIFORNIA PENAL CODE**

Sec. 134. . . . . . . . . . . . . . . . . . . . . . . . . 14
Sec. 135. . . . . . . . . . . . . . . . . . . . . . . . . 14


**UNITED STATES CODE**

18 U.S.C. Sec. 1962 . . . . . . . . . . . . . . . . . . . 11

# I.

## INTRODUCTION

Defendant Toyota Motor Sales, U.S.A., Inc.'s ("TMS") Ex Parte Application to Seal Plaintiffs' Complaint is based upon: (1) misrepresentations and omissions of fact; (2) perfunctory and conclusory statements devoid of any evidentiary support; and (3) misleading and incorrect legal arguments. Defendant TMS begins its ex parte application with a misrepresentation to this Court, *i.e.*, in the very first paragraph of its Memorandum of Points and Authorities ("*TMS Ex Parte*"), TMS alleges that "a California Superior Court judge found [that the Severance Agreement] was fully enforceable and not procedurally nor substantively unconscionable." *TMS Ex Parte*, p. 1, lines 6-7. TMS's allegation is false and misleading; the Superior Court and the Court of Appeals never ruled on the enforceability of the "severance agreement." *BILLER Decl.*, para. 2. Accordingly, Plaintiffs' complaint is not, as TMS alleges, a "collateral attack upon the findings and orders of a California Superior Court and Appellate Court." *TMS Ex Parte*, p. 3, lines 8-10.

TMS also alleges that Plaintiffs' complaint contains "numerous misrepresentations" and "false and/or misleading disclosures." *TMS Ex Parte*, p. 4, lines 18-21. However, TMS does not supply this Court with <u>any</u> evidence substantiating these conclusory allegations. In fact, TMS does not identify

even one of the allegedly "numerous misrepresentations" contained in the complaint.

Additionally, while TMS provides this Court with a *version* of the history of the state Court litigation between it and Plaintiff Dimitrios P. Biller ("BILLER"), it conveniently fails to inform this Court about Defendants' repeated attempts to intervene and stop a lawsuit BILLER filed against Los Angeles County, over which Judge King presides (*Biller v. Los Angeles County*, Case No. CV-09-03079-GHK (RZx)). In that case, Judge King denied TMS's Ex Parte Application to file a Complaint-in-Intervention, and Magistrate Judge Zarefsky denied TMS'S Ex Parte Application to Stay Discovery and its Ex Parte Application to Seal Exhibit "3" attached to the Complaint in this action. *BILLER Decl.*, para. 9, Exs. 5 and 6. Each of these failed attempts was intended to keep from the public and the Courts much of the facts and information alleged in the present complaint.

Moreover, in the present ex parte attempt to conceal facts and information of its crimes, TMS conveniently ignores the law and requirements it must satisfy in order to seal Plaintiffs' complaint. Instead, TMS merely argues, without presenting any supporting evidence, that: "good cause" to seal the complaint exists because it will be "prejudiced"; there is a strong public policy favoring the attorney-client privilege; and "[t]here is

no burden to Biller in sealing the Complaint." *TMS Ex Parte*, p. 4, lines 1-28; p. 5, lines 1-4. TMS skips entirely the balancing analysis required by *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3rd Cir. 1994), and incorrectly relies upon the "burden to Biller" as a primary factor to consider when ruling on a motion to seal. The "burden to Biller" is irrelevant; the Court must balance the harm of not sealing the complaint with the "interests" of the public in keeping it unsealed. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-945 (7th Cir. 1999).

Finally, TMS repeatedly argues that the attorney-client privilege, *Business & Professions Code* Sec. 6068(e)(1), and the general concept of "confidentiality" require the sealing of the complaint. However, for the following reasons, TMS's arguments fail to support its request to seal the complaint. First, TMS wholly ignores that Plaintiffs' claims are based primarily upon facts, events, and transactions that occurred <u>after</u> BILLER was compelled to resign from TMS. Accordingly, TMS's reliance on the attorney-client privilege is misplaced. Second, TMS has not satisfied its initial burden of demonstrating that the allegations in the complaint are privileged "communications." TMS did not submit any "evidence" to support its position, and failed to specifically indicate (other than by reference in a footnote) which "communications" it contends are privileged, and

why. Third, the crime/fraud exception to the attorney-client privilege contained in *California Evidence Code* Sec. 956 applies to any arguably privileged communications at issue in this case. Fourth, because TMS filed a complaint in Los Angeles Superior Court against BILLER alleging that he breached duties arising from the lawyer-client relationship, *California Evidence Code* Sec. 958 applies and eliminates any privilege that may have existed. Finally, the exceptions to the attorney-client privilege trump *Business & Professions Code* Sec. 6068(e)(1).

TMS's ex parte application to seal Plaintiffs' complaint must be denied. It is unsupported by both applicable law and evidence. It also is outweighed by the public's strong interest in knowing the crimes and frauds that Defendants have perpetrated, and continue to perpetrate, throughout the United States.

## II.

### Factual BACKGROUND

#### A. Ongoing Litigation Between Biller and TMS

Plaintiffs' complaint is predicated, in large part, upon the actions Defendants have taken to compel BILLER's silence since he was forced to resign as National Managing Counsel of TMS. Defendants' actions are in furtherance of their conspiracy to commit, and commission of, crimes and frauds calculated to

conceal, withhold, and destroy evidence and information about the shortcomings of vehicles they design, manufacture, and sell worldwide. Defendants are aware, and the complaint demonstrates, that BILLER possesses specific knowledge of their systematic pattern of intentionally concealing, withholding, and destroying evidence and information, and Defendants repeatedly have attempted to compel BILLER's silence by, among other things, filing and threatening to file lawsuits against him, and interfering in lawsuits in which he is engaged, and to which Defendants are not parties. Given Defendants' actions, it is important to know certain facts pertaining to, and events which have occurred in, other lawsuits involving BILLER that currently are ongoing.

Specifically, as detailed in the complaint, in a lawsuit TMS filed against BILLER in Los Angeles Superior Court ("*TMS v. BILLER*"), BILLER stipulated to a TRO which was based upon false and misleading declarations TMS filed with the Superior Court. *BILLER Decl.*, para. 3, Ex. 1. BILLER has filed with the Superior Court a Motion for an Order Reversing the Stipulated TRO or, in the alternative, to Stay the Arbitration of *TMS v. BILLER* pending the outcome of this case. *BILLER Decl.*, para. 4, Ex. 2.

In *TMS v. BILLER*, BILLER never requested that the Superior Court not enforce the Severance Agreement (as TMS implies in its

ex parte to seal). *BILLER Decl.*, para. 2. Rather, BILLER is
making that request for the first time before this Honorable
Court. When TMS filed a Motion to Compel Arbitration of the
claims in *TMS v. BILLER*, BILLER opposed that motion on the
ground that the Arbitration Clause at issue is not mutual and,
instead, is one-way against BILLER, so TMS's complaint should
not be compelled into arbitration. *BILLER Decl.*, para. 6. The
Superior Court Judge agreed with BILLER's ground for opposition,
but determined that the arbitrator, not the Court, has to make
that decision in the first instance. *BILLER Decl.*, para. 6, Ex.
4. BILLER also argued that the Arbitration Clause was
procedurally and substantively unconscionable. *Id.*

Prior to the filing of the present complaint in this case,
*TMS v. BILLER* is the only lawsuit that has ever existed between
Defendants and BILLER. The other disputes between Defendants
and BILLER were "claims" that the parties resolved without the
filing of any lawsuits.

### B. TMS's Interference with BILLER'S Pending Federal Action Against the County of Los Angeles.

As alleged in the complaint, after BILLER was compelled to
resign from TMS, his psychiatrist, Dr. Alice Rudnick, strongly
recommended that he take time off from work. At that time,

BILLER was suffering from Major Depressive Disorder. *BILLER*
*Decl.*, para. 5. Dr. Rudnick predicted that BILLER would sustain
Post Traumatic Stress Disorder if he were to go through another
experience similar to the circumstances that forced him to
resign from TMS.

Following the advice of Dr. Rudnick, BILLER took
approximately 8 months off from work. Thereafter, in
approximately May 2008, BILLER accepted a position as a Deputy
District Attorney with the Los Angeles County District
Attorney's Office. *BILLER Decl.*, para. 7. On August 14, 2008,
BILLER sustained Post Traumatic Stress Disorder when the
Subpoena Control Officer and BILLER'S immediate Supervisor filed
a false complaint against BILLER because he lodged complaints
about Sheriff's Deputies failing to appear in Court on time, or
at all, and not bringing the necessary evidence to Suppression
Hearings, Trials, and Preliminary Hearings. *Id.* As a result of
BILLER'S emotion breakdown, the County of Los Angeles/Los
Angeles District Attorney's Office terminated BILLER'S
employment in violation of the Americans with Disabilities Act.
*BILLER Decl.*, para. 8.

BILLER filed a complaint against the County of Los Angeles,
and did not name TMS or any other Toyota entities as parties.
*Id.* BILLER sought a Stipulated Protective Order to disclose his
psychiatric records and information and documents related to his

employment with TMS. The records and information are necessary to support BILLER's lawsuit against Los Angeles County and the LADA's Office. In response, TMS filed Ex Parte Applications to (1) Stay Discovery, and (2) file a Complaint-in-Intervention. Judge King denied the Ex Parte Application to file a Complaint-in-Intervention. *BILLER Decl.*, para. 9, Ex. 5. Magistrate Judge Zarefsky denied TMS's Ex Parte Application to Stay Discovery. *BILLER Decl.*, para. 9. Ex. 6.

As obligated under Rule 26(a), BILLER disclosed to TMS in his wrongful discharge case against Los Angeles County "The 23-Page Memo". The 23-Page Memo is evidence that the experience BILLER went through as a Deputy District Attorney is identical to the experience that he went through as National Managing Counsel at TMS. *Complaint*, Ex. 3.

On June 26, 2009, in *TMS v. BILLER*, TMS filed an Ex Parte Application/Motion to Seal The 23-Page Memo. *BILLER Decl.*, para. 10. Judge John Segal of the Superior Court denied the Ex Parte Application, but set the matter for hearing on a noticed motion basis for August 14, 2009. Unhappy with this ruling, three-days later, in the Federal lawsuit against Los Angeles County, TMS filed another Ex Parte Application/Motion to Seal The 23-Page Memo. On July 9, 2009, Magistrate Judge Zarefsky denied that application without prejudice to the filing of a noticed motion. *BILLER Decl.*, para. 10, Ex. 7.

The current ex parte application to seal will be TMS's third bite at the proverbial apple regarding "The 23-Page Memo." But TMS is not stopping there. Instead, TMS now seeks to seal Plaintiffs' entire complaint, including every allegation of the crimes and frauds Defendants have committed, and which they continue to commit, and which have destroyed BILLER's life and efforts to make a living.

### III.

### ARGUMENT

A. **TMS has failed to show "good cause" to seal the complaint; the balancing factors favor Plaintiffs.**

TMS conveniently fails to cite the law and set forth the burden it must satisfy in order to seal Plaintiffs' complaint. TMS also fails to offer any specific facts justifying the sealing of Plaintiffs' complaint. Accordingly, TMS's ex parte application must be denied.

TMS has the burden of proving, and the Court must find, "good cause" before Plaintiffs' complaint can be ordered sealed. *Gray v. First Winthrop Corp.*, 133 F.R.D. 29, 30 (N.D.Ca. 1990). "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994)

(*quoting Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3rd Cir. 1984). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Pansy*, *supra*, at 786 (*quoting Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)). TMS clearly has failed to meet this burden.

The factors relevant to determining whether "good cause" exists include the following: (1) whether the information is being sought for a legitimate purpose; (2) whether disclosure will violate any privacy interest; (3) whether disclosure will cause a party embarrassment; (4) whether disclosure is important to public health and safety; (5) whether sharing of information among litigants will promote fairness and efficiency in the litigation; (6) whether the party seeking the protective order is a public entity or official; and (7) whether the case involves issues of public importance. *Pansy v. Borough of Stroudsburg*, *supra*, 23 F.3d at 787-791.

In this case, TMS cannot meet its burden of proof. First, the information in the complaint is being disclosed for legitimate purposes. Plaintiffs have pleaded a claim pursuant to the *Racketeer Influenced Corrupt Organization Act* ("R.I.C.O."), 18 U.S.C. Sec. 1962. A R.I.C.O. claim must be plead with specificity, and Plaintiffs have satisfied that

requirement. Plaintiffs' complaint alleges with specificity that Defendants have engaged, and continue to engage, in acts of obstruction of justice, mail fraud, wire fraud, tampering with witnesses, and retaliating against a witness. *See* Complaint, p. 60, para. 78, lines 8-27.

Second, the allegations in the complaint do not violate TMS's rights of privacy. There are no rights of privacy that attach to corporations, corporate executives, and corporate managers who commit criminal and fraudulent acts. If this were the case, then the identities of criminals would be concealed from the public.

Third, any embarrassment TMS or Defendants suffer is the result of their intentional commission of illegal acts. It is within Defendants' power to stop intentionally committing illegal acts and suffering the resultant embarrassment, if any. Accordingly, Defendants' embarrassment hardly can be the result of Plaintiffs' complaint; it stems directly from their own wrongdoing.

Fourth, the allegations made in the complaint are vital to public health and safety. As alleged, there are Toyota vehicles on the road today that failed to comply with the internal safety standards of Defendant Toyota Motor Corporation ("TMC"). Furthermore, Defendants' pattern of intentionally concealing, withholding, and destroying evidence and information has caused

many severely injured plaintiffs and their families either to lose trials or settle claims against Defendants for amounts inadequate to obtain necessary medical treatment and meet other life needs.

Fifth, the sharing of information among litigants will promote fairness and efficiency in the litigation. The very nature of the allegations contained in the complaint demonstrate Defendants' propensity to abuse the litigation process, conceal, withhold, and destroy relevant evidence and information, and illegally and unfairly attempt to gain advantages over adversaries. Allowing Defendants to hide information by sealing it only will encourage Defendants' to continue their pattern of illegal and fraudulent activity.

Sixth, Defendants are neither public entities nor public officials.

Seventh, the issues set forth in the Complaint clearly involve issues of great importance pertaining to the "preservation of public trust in the scrupulous administration of justice and the integrity of the bar." *State Farm and Casualty Company v. Superior Court*, (1997) 54 Cal.App.4th 625, 630.

**B. The interests of the public clearly outweigh any possible harm to TMS.**

Even if this Court finds "good cause" to seal the complaint, TMS still must meet its burden of establishing that the harm it may sustain is outweighed by the interests of the public. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-945 (7th Cir. 1999). TMS cannot meet this burden.

Any harm TMS may sustain (which was not shown with any specificity) by not sealing the complaint is the direct result of its, and Defendants', violations of the laws of the State of California. Specifically, *California Penal Code* Secs. 134 and 135 make concealing, withholding, and destroying evidence illegal. The possibility of harm to TMS is minor because, as a Defendant, TMS has an opportunity to prove its innocence at trial.

However, the public's right to know and interest in the allegations contained in the Complaint are undeniable. First, there are plaintiffs in lawsuits pending against Defendants in many United States Federal and State courts. These litigants have an interest in, and a right to know, the allegations in the complaint. These litigants should not be allowed to be cheated and told lies in the discovery process; they should obtain all

the relevant and potentially relevant information that may lead to the discovery of admissible evidence. Second, the United States Transportation, National Highway Traffic Safety Administration ("NHTSA") obviously has a right to know if Defendants have submitted false evidence or concealed evidence that was requested by NHTSA. Finally, the Courts of the United States cannot be used wrongfully by Defendants to systematically prevent claimants from fairly and legally redressing their rights.

Therefore, TMS's ex parte application to seal the complaint should be denied on both procedural and substantive grounds.

## C. **Plaintiffs' complaint is based on allegations, facts, events and transactions that occurred after BILLER resigned**

Plaintiffs allege that they were damaged as a result of Defendants' pattern of racketeering activity calculated to conceal, withhold, and destroy evidence, obstruct justice, and intimidate and retaliate against witnesses, after BILLER was compelled to resign from TMS. As detailed more fully in the complaint, the following is a partial summary of Defendants' racketeering activities:

1. TMS manufactured and filed a lawsuit against BILLER (i.e., TMS v. BILLER)in Los Angeles Superior Court to intimidate and retaliate against him and compel his

silence regarding the crimes and fraudulent actions they have committed, and continue to commit;

2. In order to manufacture the case against BILLER in <u>TMS v. BILLER</u>, TMS hired attorneys Katz and McKenzie to attend seminars hosted by LDT CONSULTING and elicit allegedly confidential information from BILLER. TMS then filed incomplete and misleading declarations from Katz and McKenzie that intentionally omitted material facts in order to obtain the TRO and shut down LDT CONSULTING;

3. TMS's counsel threatened BILLER that TMS would seek liquidated damages of $250,000 for each occasion that BILLER said anything about his professional relationship with TMS in an effort to intimidate, retaliate against, compel the silence of, and financially destroy BILLER;

4. TMS intentionally misconstrued and abused the scope of the Confidentiality Clause and Severance Agreement and used both as a "sword," not a "shield," to prevent BILLER from informing anybody that he worked for TMS, thereby attempting to destroy his professional career;

5. BILLER was forced to close down Plaintiff LDT CONSULTING as a result of TMS's counsel's threats, the manufactured lawsuit against BILLER, the declarations of Katz and McKenzie which contained omissions of material facts, and the intimidating and retaliatory acts attendant thereto;

6. TMS destroyed the signature page of "The 23-Page Memo" to prevent BILLER and others from proving that upper level management at TMS had "actual knowledge" of the crime/frauds TMS was committing;

7. TMS interfered with BILLER's case against the LADA when it was not even a party by repeatedly attempting to intervene and conceal documents through the filing of ex parte applications;

8. TMS sought to seal the Severance Agreement and 2008 Letter of Recommendation in BILLER's case against the LADA after Judge Seal of the Los Angeles Superior Court denied that request on January 14, 2009 (a decision which TMS did not appeal); and

9. TMS is seeking criminal contempt charges against BILLER in <u>TMS v. BILLER</u> for disclosure of "The 23-Page Memo"

when it was in the public domain for nearly 2 months, and TMS knew about it being the Federal case file for 11 days before it moved to seal. A party waives any right to seal in California Superior Court if the party does not move to seal within 10 days. *Savagio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 568, 600.

The additional allegations set forth in the complaint include more specific contentions establishing a "pattern of racketeering activity" by Defendants calculated to criminally and fraudulently conceal, withhold, and destroy evidence, obstruct justice, and intimidate and retaliate against BILLER. The allegations made in the complaint are designed to demonstrate the systematic nature and pattern of Defendants' criminal and fraudulent acts, all of which continue to be perpetrated to the injury of Plaintiffs and the public.

D. **TMS has failed to meet its burden of proving that the attorney-client privilege applies to any portions of the complaint.**

In more than half of its Memorandum of Points & Authorities, TMS discusses the importance of the attorney-client privilege without ever mentioning any specific facts related to this case. *TMS Ex Parte*, p. 5, line 5 through p. 15, line 4. TMS's treatise on the attorney-client privilege is designed merely to draw the Court's attention away from the absence of

evidence and facts to support its arguments.  TMS fails to meet its burden of demonstrating that any of the information alleged in the complaint is a "communication" between a lawyer and client.  The Second Appellate District has held:

> "When a party asserts the attorney-client privilege it is incumbent upon that party to prove the preliminary fact that a privilege exists. (*Mahoney v. Superior Court* (1983) 142 Cal. App. 3d 937, 940 [191 Cal. Rptr. 425].)  Once the foundational facts have been presented, i.e., that a communication has been made "in confidence in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential," or that an exception exists. (*Evid. Code*, § 917; *BP Alaska Exploration, Inc. v. Superior Court*, supra, 199 Cal. App. 3d at p. 1262.)

*State Farm & Casualty Co., supra,* 54 Cal.App.4th at 639.

TMS fails to present this Court with any evidence to satisfy its burden of proof.  The supporting declarations of Alan Carlson and Michael Gregg do not state facts sufficient to meet TMS's burden, and the allegations in the complaint are not "evidence."

Furthermore, not all information and documents are protected by the attorney-client privilege.  The Court of Appeals stated:

> "However, the attorney-client privilege only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication. (*Aerojet-General Corp. v. Transport Indemnity Insurance* (1993) 18 Cal. App. 4th 996, 1004-1005 [22 Cal. Rptr. 2d 862].)

"Therefore, to the extent that Ms. Zuniga has knowledge about the practices and procedures of State Farm, or the existence of claims manuals and other documents which are normally utilized by State Farm in the operation of its business, the information is not privileged. (*Holm v. Superior Court* (1954) 42 Cal. 2d 500, 511 [267 P.2d 1025], disapproved on another point in *Suezaki v. Superior Court* (1962) 58 Cal. 2d 166, 176 [23 Cal. Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073]; *S.F. Unified Sch. Dist. v. Superior Court* (1961) 55 Cal. 2d 451, 457 [11 Cal. Rptr. 373, 359 P.2d 925, 82 A.L.R.2d 1156].) Also, it would not be a violation of the attorney-client privilege for Ms. Zuniga to divulge that such documents exist but were not produced in connection with the Taylor Action, although to divulge a conversation to that effect or the fact that such information had been delivered to an attorney, would violate the privilege. (*People v. Lee* (1970) 3 Cal. App. 3d 514, 526 [83 Cal. Rptr. 715] [". . . the fact that the client delivered . . . evidence to his attorney may be privileged, the physical object [or information] itself does not become privileged merely by reason of its transmission to the attorney."].)

"Nor does the attorney-client privilege protect independent facts related to a communication; that a communication took place, and the time, date and participants in the communication. (*Coy v. Superior Court* (1962) 58 Cal. 2d 210, 219-220 [23 Cal. Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) In addition, the fact that an attorney has retained one or more independent agents to aid the attorney in connection with the litigation does not automatically qualify information discovered by the agents for protection by the privilege."

*Id.* at 639-641.

TMS incorrectly asserts that BILLER should have sought Court approval before making any disclosures, and claims both *General Dynamics v. Superior Court* (1994) 7 Cal.4th 1164 and *State Farm Fire & Casualty Co., supra,* support this argument. TMS's citations do not support this position. In *State Farm*

*Fire & Casualty Co.*, *supra*, plaintiffs filed a declaration of defendant's paralegal without going through an <u>in camera</u> hearing. In *General Dynamics*, *supra*, the Court discusses <u>in camera</u> proceedings as a managerial safeguard, but not a prerequisite to disclosure. *Infra.* The fact remains, it is TMS's burden to establish at the outset that the statements are privileged communications – only then would the burden shift to Plaintiffs to demonstrate applicability of an exception.

E. **Even if there are privileged communications, the crime/fraud exception applies.**

TMS's reliance on *General Dynamics v. Superior Court*, *supra*, 7 Cal.4th 1164, and certain Rules of Professional Conduct is ironic. In *General Dynamics, supra,* in-house counsel was afforded the right to sue their corporate employer for wrongful discharge. The Court noted that there are managerial or administrative procedures that can be utilized to prevent the disclosure of attorney-client information.

> "Second, the contours of the statutory attorney-client privilege should continue to be strictly observed. We reject any suggestion that the scope of the privilege should be diluted in the context of in-house counsel and their corporate clients. Members of corporate legal departments are as fully subject to the demands of the privilege as their outside colleagues. It is likely, however, that many of the cases in which in-house counsel is faced with an ethical dilemma will lie outside the scope of the statutory privilege. Matters involving the commission of a crime or a fraud, or circumstances in which the attorney reasonably believes that disclosure is

necessary to prevent the commission of a criminal act likely to result in death or substantial bodily harm, are statutory and well-recognized exceptions to the attorney-client privilege. (*See*, e.g., *Marc Rich & Co. v. United States*, 731 F.2d 1032 (2nd Cir. 1984); *People v. Pic'l* (1981) 114 Cal. App. 3d 824 [171 Cal.Rptr. 106]; *Glade v. Superior Court* (1978) 76 Cal. App. 3d 738 [143 Cal.Rptr. 119]; *Evid. Code* § 956- 958.)  As to them, "[t]he privilege takes flight if the relation is abused." (*Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993, 1000-1001 (1933).)  Although their revelation in the course of a retaliatory discharge suit may do lasting damage to the expectations of the corporate client (or, more likely, a corporate executive) that disclosures to counsel would remain inviolate, a concern for protecting the fiduciary aspects of the relationship in the case of a client who confides in counsel for the purpose of planning a crime or practicing a fraud is misplaced; such disclosures do not violate the privilege.

"Moreover, the trial courts can and should apply an array of ad hoc measures from their equitable arsenal designed to permit the attorney plaintiff to attempt to make the necessary proof while protecting from disclosure client confidences subject to the privilege.  The use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings, are but some of a number of measures that might usefully be explored by the trial courts as circumstances warrant. We are confident that by taking an aggressive managerial role, judges can minimize the dangers to the legitimate privilege interests the trial of such cases may present."

*General Dynamics*, *supra*, at 1190-1192

The Appellate Court in *State Farm & Casualty Co., supra,* states:

"*Evidence Code* section 956 is the so-called crime/fraud exception: 'There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.'

"To invoke the *Evidence Code* section 956 exception to the attorney-client privilege, the proponent must make a prima

facie showing that the services of the lawyer 'were sought or obtained' to enable or to aid anyone to commit or plan to commit a crime or fraud. (*BP Alaska Exploration, Inc. v. Superior Court*, supra, 199 Cal. App. 3d at 1262.)

"The standard of review upon a finding to support the crime/fraud exception is stated in *BP Alaska Exploration, Inc. v. Superior Court*, supra, 199 Cal. App. 3d at 1261-1262: 'The appellate court may not weigh the evidence, resolve conflicts in the evidence, or resolve conflicts in the inferences that can be drawn from the evidence. *If there is substantial evidence in favor of the finding, no matter how slight it may appear in comparison with the contradictory evidence, the finding must be affirmed.*'" (Italics added.)

*State Farm Fire & Casualty Co.*, supra, at 643-646.

The complaint describes the crimes and frauds Defendants committed, and those they continue to commit. The very nature of the R.I.C.O claim is criminal, and the allegations describe criminal conduct.

F. ***Business & Professions Code* Section 6068(e) is Trumped by the California Evidence Code exceptions to the attorney-client privilege.**

*Fox Searchlight Pictures, Inc. v. Gia Paladino* (2001) 89 Cal.App.4th 294, 313-314, holds:

"If an attorney, in protecting her own rights, is entitled to introduce otherwise privileged communications at trial, a fortiori she is entitled to reveal those communications to her lawyers in advance of trial. As we explain below, if this were not the case, an attorney could successfully defend the ethics of her behavior in court only to be disciplined for unethical behavior by the State Bar. The State Bar Court, however, has shown no interest in such

catch-22 prosecutions. To the contrary, the court has held the duty of confidentiality expressed in <u>Business and Professions Code section 6068, subdivision (e)</u> is modified by the exceptions to the attorney-client privilege contained in the Evidence Code."

Therefore, TMS's objections based on *Business & Professions Code* Sec. 6068(e) must be overruled if this Court finds the crime/fraud exception applies.

G. **TMS eviscerated the attorney-client privilege by filing TMS v. BILLER.**

Under *California Evidence Code* Sec. 958: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or client, of a duty arising out of the lawyer-client relationship." TMS's complaint in <u>TMS v. BILLER</u> is based upon its position that Plaintiff violated his legal and ethical obligations under the attorney-client privilege. BILLER has a right to defend against these allegations with information he obtained while working at TMS, and he has done so in the State Court action.

H. **Any and all information that BILLER created belongs to him as the holder of the Attorney-Work Product Privilege.**

TMS repeatedly cites to the attorney work-product privilege to support its request to seal. However, TMS does not provide

any evidentiary support for this position.  Moreover, TMS does not identify the attorney to whom the work-product privilege belongs because most of the information, documents, and ESI that Defendants want to conceal are the work product of BILLER. BILLER is the holder of the attorney work-product privilege.  *BP Alaska Exploration, Inc. v. Superior Court* (1998) 199 Cal.App.3d 1240, 1251; *Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 271.

## IV.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny TMS's ex parte application to seal the complaint.

Dated:  July 28, 2009          JOSEPH P. WOHRLE, ESQ.
                               JEFFREY F. ALLEN, ESQ.
                               ALLEN + WOHRLE, LLP


                               _____
                                  Jeffrey F. Allen
                               Attorneys for Plaintiffs,
                               Dimitrios P. Biller and
                               Litigation, Discovery & Trial
                               Consulting, Inc.