MORGAN, LEWIS & BOCKIUS LLP
DAVID L. SCHRADER, State Bar No. 149638
dschrader@morganlewis.com
CHRISTINA L. SEIN, State Bar No. 229094
csein@morganlewis.com
GEORGIA SCHNEIDER, State Bar No. 251358
gschneider@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

Attorneys for Defendants
Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Christopher Reynolds, Jane Howard-Martin, Eric Taira, Dian Ogilvie and Alicia McAndrews

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIOS P. BILLER, LITIGATION DISCOVERY & TRIAL CONSULTING, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | Case No. CV09-05429 GHK (RZx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>[Notice of Motion and Motion; Request For Judicial Notice; Declaration of Christina L. Sein; and [Proposed] Order Filed Concurrently Herewith.]<br><br>Assigned to: Honorable George H. King<br><br>Date: November 9, 2009<br>Time: 9:30 am<br>Location: Dept. 650<br><br>Complaint Filed:      July 24, 2009<br>First Am. Compl. Filed:  Sept. 17, 2009 |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21344071.2

MEMORANDUM OF POINTS AND
AUTHORITIES ISO DEFENDANTS' MTN
TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1
II. STATEMENT OF FACTS..................................................................................1
    A. Biller Worked As An Attorney For TMS ................................................1
    B. State Court Compels Arbitration of Biller's Claims.............................3
    C. Biller Files This Lawsuit..........................................................................3
III. CLAIMS SHOULD BE COMPELLED TO ARBITRATION.......................4
    A. Federal Law Strongly Favors Enforcement of Arbitration Agreements ...................................................................................................4
    B. The Arbitration Clause in the Severance Agreement Between Biller and TMS is Valid and Enforceable................................................5
    C. Biller Failed to Rescind the Severance Agreement Based on his Alleged Mental Incapacity .........................................................................6
    D. Plaintiffs' Claims are all "Arbitrable Claims" Subject to Final and Binding Arbitration ...............................................................................7
        1. Biller's Claim for Constructive Wrongful Termination and Intentional Infliction of Emotional Distress .........................9
        2. Biller's Claim for Defamation Per Se .........................................9
        3. Plaintiffs' Civil RICO Claim......................................................10
            a. RICO Claims are Arbitrable............................................10
            b. LDT Consulting Should Also Be Compelled To Arbitration ..................................................................11
    E. This Litigation Should Be Stayed Pending Arbitration.......................13
IV. CONCLUSION ................................................................................................14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

MEMORANDUM OF POINTS AND
AUTHORITIES ISO DEFENDANTS' MTN
TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Complaint of Hornbeck Offshore Corp.*
  981 F.2d 752 (5th Cir. 1993) .................................................................................. 13

*Allied-Bruce Terminix Cos. v. Dobson*
  513 U.S. 265 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) ........................................... 4

*AT&T Technologies, Inc. v. Communication Workers of America*
  475 U.S. 643 (1986) .................................................................................................. 7

*Burgess v. Security-First Nat. Bank*
  44 Cal. App. 2d 808, 113 P.2d 298 (1941) ............................................................... 6

*Carpenters 46 N. Calif. Counties Conference Bd. v. Zcon Builders*
  96 F.3d 410 (9th Cir. 1996) ..................................................................................... 11

*Chiron Corp v. Ortho Diagnostic Sys., Inc.*
  207 F. 3d 1126 (9th Cir. 2000) .................................................................................. 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
  207 F.3d 1126 (9th Cir. 2000) ................................................................................... 5

*Communist Party of the United States v. 522 Valencia, Inc.*
  35 Cal. App. 4th 980, 41 Cal. Rptr. 2d 618 (1995) ................................................. 12

*Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc.*
  985 F.2d 459 (9th Cir. 1993) ..................................................................................... 6

*Dean Whitter Reynolds, Inc. v. Byrd*
  470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) .......................................... 5

*Dream Theater, Inc. v. Dream Theater*
  124 Cal. App. 4th 547,  21 Cal. Rptr. 3d 322 (2004) ................................................ 8

*First Options of Chicago, Inc. v. Kaplan*
  514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ........................................ 5

*Gilmer v. Interstate/Johnson Lane Corp.*
  500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1961) ..................................... 5, 10

*Howsam v. Dean Witter Reynolds, Inc.*
  537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ........................................ 7, 8

*Mesler v. Bragg Mgmt. Co.*
  39 Cal. 3d 290, 216 Cal. Rptr. 443 (1985) ............................................................. 12

*Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*
  801 F.2d 748 (5th Cir. 1986) ................................................................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

MEMORANDUM OF POINTS AND
AUTHORITIES ISO DEFENDANTS' MTN
TO COMPEL ARBITRATION

AUT

# TABLE OF AUTHORITIES
## (continued)
**Page**

*Mills v. Kopf*
   216 Cal. App. 2d 780, 31 Cal. Rptr. 80 (1963)..................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
   473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)....................................................10

*Penzoil Co. v. Texaco, Inc.*
   481 U.S. 1, 13-14, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) ..................................................6

*Retail Clerks Union, Local 428, AFL-CIO v. L. Bloom Sons Co., Inc.*
   173 Cal. App. 2d 701, 344 P.2d 51 (1959) ........................................................................12

*Rodriguez v. American Technologies, Inc.*
   136 Cal. App. 4th 1110, 39 Cal. Rptr. 3d 437 (2006)..........................................................9

*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*
   74 Cal. App. 4th 1211, 88 Cal. Rptr. 2d 732 (1999).............................................................7

*Shearson/American Express, Inc. v. McMahon*
   482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)....................................................11

*Sink v. Aden Enter. Inc.*
   352 F.3d 1197 (9th Cir. 2003)............................................................................................13

*Webber v. Inland Inv., Inc.*
   74 Cal. App. 4th 884, 88 Cal. Rptr. 2d 594 (1999).............................................................12

**Statutes**

9 U.S.C. § 1............................................................................................................................4

9 U.S.C. § 2.........................................................................................................................4, 5

9 U.S.C. § 3..........................................................................................................................13

Cal. Civ. Code. § 1691...........................................................................................................6

Cal. Civ. Code. § 39...............................................................................................................6

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Los Angeles

iii

MEMORANDUM OF POINTS AND
AUTHORITIES ISO DEFENDANTS' MTN
TO COMPEL ARBITRATION

AUT

To the extent any claims remain in this Court after ruling on Defendants' Motion to Dismiss, filed concurrently herewith, Defendants move for an order compelling Plaintiffs to arbitrate those claims, pursuant to the terms of the severance agreement attached to Plaintiffs' First Amended Complaint.

## I. INTRODUCTION

Plaintiff Dimitrios P. Biller ("Biller") and his company Litigation Discovery & Trial Consulting, Inc. ("LDT Consulting") (collectively "Plaintiffs") filed this lawsuit as an attempted end-run around an unfavorable ruling Biller received from the Los Angeles County Superior Court in *Toyota Motor Sales, U.S.A. Inc. v. Biller*, Case No. SC100501. Biller and defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") are currently involved in litigation in state court involving many of the same allegations asserted in Plaintiffs' First Amended Complaint here. Biller has already been ordered to arbitration in state court based on the same contract he attaches to his First Amended Complaint in this case. Now, Biller seeks to avoid this order by filing this lawsuit in federal court, adding his company as a plaintiff, and asserting some new arguments.

The severance agreement between Biller and TMS expressly provides for arbitration of all claims arising before or after execution of the agreement "that in any way relate to the subject matter, interpretation, application, or alleged breach of [the] Agreement." [Severance Agreement ¶ 6.1, Attached to First Amended Complaint ("FAC") as Ex. 2.] Each of the claims Plaintiffs allege is plainly covered by this provision. Given the broad language of the arbitration agreement, the strong public policy favoring arbitration, and controlling Ninth Circuit law, Defendants respectfully request that this Court compel arbitration of any remaining claims and stay the litigation pending arbitration.

## II. STATEMENT OF FACTS

### A. Biller Worked As An Attorney For TMS

Biller began working for TMS in April 2003 as an attorney in the Legal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21344071.2

MEMORANDUM OF POINTS AND
AUTHORITIES ISO DEFENDANTS' MTN
TO COMPEL ARBITRATION

Services Group with the title of Managing Counsel.  [FAC ¶ 18, p. 12:6-10.]  In 2007, Biller presented TMS with a claim asserting constructive wrongful discharge.  [FAC ¶ 56, p. 36:4-6.]  Biller was represented by an attorney, went to mediation as required by TMS's alternative dispute resolution process, and ultimately settled his claims by entering into a "Confidential Severance Agreement and General Release of All Known and Unknown Claims" ("Severance Agreement").  [FAC ¶ 56, p. 36:6-21; Severance Agreement, attached to FAC as Ex. 2, pp. 110-124.]  Biller agreed to a broad release of claims and discharged TMS, its affiliates (including Toyota Motor Corporation ("TMC")), and employees (including the named individual defendants) from any liability arising out of or connected to his employment with and separation from TMS.  [Severance Agreement ¶ 3, attached to FAC as Ex. 2.]  According to Biller, at the time, he was being treated and medicated for physical and psychiatric problems.  [FAC ¶ 56, p. 36:23-24.]

    As part of his Severance Agreement, Biller expressly agreed to arbitration as the "exclusive remedy" for the following disputes:

> (1) all known and unknown claims which [Biller] may have against TMS or any other Releasee which ***arose at or prior to the date this Agreement is signed and is not extinguished by this Agreement***, if any;
>
> (2) all known and unknown claims [Biller] may have against TMS or any other Releasee that ***in any way relate to the subject matter, interpretation, application, or alleged breach of this Agreement*** arising at any time prior to, concurrently with or subsequent to [Biller's] signing this Agreement; and
>
> (3) any known or unknown claims that [Biller] may have

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/21344071.2                           2                MEMORANDUM OF POINTS AND
                                                      AUTHORITIES ISO DEFENDANTS' MTN
                                                              TO COMPEL ARBITRATION

against TMS or any other Releasee *which arise at any time after Associate signs this agreement as well as the arbitrability of any dispute* . . . .

[Severance Agreement ¶ 6.1, attached to FAC as Ex. 2 (emphasis added).]

### B. State Court Compels Arbitration of Biller's Claims

On November 7, 2008, TMS filed a complaint in state court against Biller for injunctive relief and requested a temporary restraining order ("TRO") preventing Biller from violating the attorney-client privilege. Biller filed a cross-complaint for a TRO and permanent injunction prohibiting TMS from interfering with the business practices of himself and LDT Consulting. TMS moved to compel arbitration pursuant to Biller's Severance Agreement. Biller opposed, arguing that his Severance Agreement is unconscionable. The Superior Court granted TMS's motion to compel arbitration and specifically found that "the arbitration agreement is neither substantively nor procedurally unconscionable." [January 14, 2009 Order p. 8, attached to Req. for Jud. Notice ("RFJN") as Ex. 1.] The parties were ordered to arbitration, with the arbitrator to determine whether the claims are arbitrable under the Severance Agreement. The arbitration is now pending before the Honorable Gary Taylor (Ret.).

### C. Biller Files This Lawsuit

Biller then filed this lawsuit on July 24, 2009. Biller seeks a ruling from this Court that his Severance Agreement is "unenforceable" because he "was not legally competent to enter into and execute the Severance Agreement because of the physical and mental disabilities from which he was suffering at the time." [FAC ¶ 57, p. 37:5-9.] Three days after filing this action, Biller filed a motion in state court for an order "Reversing the Stipulated TRO, or in the alternative, Staying the Arbitration Pending the Outcome of the Federal case." [Biller's Mot. for Order,

RFJN, Ex. 3.] In other words, Biller seeks to use this lawsuit as an excuse to avoid the arbitration ordered by the Superior Court.

### III.   CLAIMS SHOULD BE COMPELLED TO ARBITRATION

To the extent any claims remain in this Court after ruling on Defendants' Motion to Dismiss, Defendants move for an order compelling Plaintiffs to arbitrate them pursuant to the terms of Biller's Severance Agreement. As demonstrated below, Biller's claims for constructive wrongful termination, intentional infliction of emotional distress and defamation, and Plaintiffs' civil RICO claim are all covered by this agreement. Furthermore, the arbitrability of any dispute is itself subject to arbitration.

#### A.   Federal Law Strongly Favors Enforcement of Arbitration Agreements.

The arbitration agreement between Biller and TMS expressly provides for application of the Federal Arbitration Act ("FAA"). Paragraph 8.4 of the Severance Agreement specifically provides that "the arbitration agreement . . . will be governed by the Federal Arbitration Act unless it is found by a decision maker of competent jurisdiction not to be governed by the Federal Arbitration Act, in which case it will be governed by California Law." [Severance Agreement ¶ 8.4, attached to FAC as Ex. 2.] The FAA applies to any written arbitration provision in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. In interpreting § 2 of the FAA, the Supreme Court has construed the term "involving commerce" broadly to cover all transactions within the reach of Congress' power under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-75, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

The FAA establishes the validity and enforceability of written agreements to arbitrate disputes. *See* 9 U.S.C. § 1 *et seq*. It provides that an arbitration agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §

2.  In enacting the FAA, Congress demonstrated a liberal policy favoring arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1961). By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Whitter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (emphasis in original).

### B. The Arbitration Clause in the Severance Agreement Between Biller and TMS is Valid and Enforceable.

Under the FAA, the Court is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Any doubt concerning the scope of arbitrable issues should usually be decided in favor of arbitration. *See, e.g., Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1131 (9th Cir. 2000).

Attached to Plaintiffs' First Amended Complaint as Exhibit 2 is a copy of the Severance Agreement entered into between Biller and TMS. Biller and TMS initialed each page of the agreement, including the pages containing the arbitration clause. [Severance Agreement, attached to FAC as Ex. 2.] The agreement was also signed by Biller and his attorney. [*Id.*] Furthermore, Biller received valuable consideration in exchange for his obligations under the Severance Agreement. [*Id.* at ¶ 2.]

Moreover, the California Superior Court has already rejected Biller's argument that the agreement is unenforceable, specifically finding that the agreement is "neither substantively nor procedurally unconscionable." [January 14,

2009 Order p. 8, RFJN, Ex. 1.] The Superior Court also found that "the issue of arbitrability of [Biller's claims] is also one for the arbitrator." [*Id*.] The application of the principles of comity to the instant action makes it clear that Biller cannot simply circumvent the Superior Court's orders by ignoring them and then trying to obtain a different ruling from this Court. *See Penzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13-14, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal court should not interfere with pending state court cases); *Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc.,* 985 F.2d 459, 462-463 (9th Cir. 1993) (district court cannot issue injunction preventing arbitration ordered by the state court).

### C. **Biller Failed to Rescind the Severance Agreement Based on his Alleged Mental Incapacity.**

As an obvious collateral attack on the Superior Court order, Biller seeks a ruling from this Court that the Severance Agreement is unenforceable. In the First Amended Complaint, Biller alleges that the Severance Agreement should not be enforced because he "was not legally competent to enter into and execute the Severance Agreement because of the physical and mental disabilities from which he was suffering at the time." [FAC ¶ 57, p. 37:5-9.] This argument was not raised in Biller's opposition to TMS's motion to compel arbitration in state court and should not be entertained here. In addition, Biller has made no attempt to rescind the Severance Agreement on these grounds.

A contract is voidable, and therefore subject to rescission, if a person is "of unsound mind, but not entirely without understanding." Cal. Civ. Code. § 39; *see also Mills v. Kopf*, 216 Cal. App. 2d 780, 783-784, 31 Cal. Rptr. 80 (1963). Rescission based on lack of mental incapacity must be made promptly on discovery of facts supporting the right to rescind. *Burgess v. Security-First Nat. Bank*, 44 Cal. App. 2d 808, 820, 113 P.2d 298 (1941). The party seeking rescission of a voidable contract must (1) give notice of the rescission, and (2) restore anything of value received. Cal. Civ. Code. § 1691; *see also Burgess*, 44 Cal. App. 2d at 818 ("In

case of a person not entirely without understanding, a suit for rescission may be brought, or the contract may be rescinded by the act of the party himself. But in accordance with the general rules, he must restore everything of value received, or offer to do so.") A party loses the right to rescind by accepting and retaining the benefits accruing under the contract. *Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*, 74 Cal. App. 4th 1211, 1226, 88 Cal. Rptr. 2d 732 (1999).

Biller does not allege that he has given notice of rescission nor has he offered to restore the severance payment he received pursuant to the terms of the Severance Agreement. As a result, Biller has lost his right to rescind, and the Severance Agreement should be enforced.

### D. Plaintiffs' Claims are all "Arbitrable Claims" Subject to Final and Binding Arbitration.

The Supreme Court has held that, "the question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination ***[u]nless the parties clearly and unmistakably provide otherwise***.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (quoting *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649 (1986)) (emphasis added). The Severance Agreement very clearly states that "the arbitrability of any dispute" constitutes an "Arbitrable Claim." [Severance Agreement ¶ 6.1, attached to FAC as Ex. 2.] Therefore, at the very least, the Court should grant Defendants' motion and compel arbitration of the resolution of the initial dispute regarding arbitrability[1].

In addition to this clear and express language, evidence of the parties' intention in this regard may also be found within the arbitration rules to which they have agreed in the Severance Agreement. The Severance Agreement provides as

---

[1] Whether determined by an arbitrator or this Court, Biller's claims for constructive wrongful termination, intentional infliction of emotional distress and defamation, and Plaintiffs' civil RICO claim all fall squarely within the provisions of the arbitration clause and as such are "Arbitrable Claims" subject to final and binding arbitration.

follows:

> Arbitration Rules and Procedures. The arbitration shall be held in accordance with the rules and regulations of Judicial Arbitration and Mediation Services (JAMS) pertaining to employment disputes.

[Severance Agreement ¶ 6.2, attached to FAC as Ex. 2.] The JAMS Rules provide that foundational issues or "gateway" disputes, as termed by the Supreme Court in *Howsam*, regarding arbitrability are within the jurisdiction of and for the arbitrator to decide:

> Rule 11. Interpretation of Rules and Jurisdictional Challenges
>
> * * *
>
> (c) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

[Declaration of Christina L. Sein in Support of Defendants' Motion to Compel Arbitration ("Sein Decl."), ¶ 2, Ex. 1.] Accordingly, by agreement to the JAMS rules, TMS and Biller have agreed to arbitrate jurisdictional and arbitrability disputes. *See Dream Theater, Inc. v. Dream Theater,* 124 Cal. App. 4th 547, 557, 21 Cal. Rptr. 3d 322 (2004) (holding that "where the Contract provides for arbitration in conformance with rules that specify the arbitrator will decide the scope of his or her own jurisdiction, the parties' intent is clear and unmistakable … that the arbitrator will decide any dispute over the arbitrability); *see also Rodriguez*

*v. American Technologies, Inc.,* 136 Cal. App. 4th 1110, 1123, 39 Cal. Rptr. 3d 437 (2006) (holding that by incorporating the American Arbitration Association Construction Industry Rules, which specify that the arbitrator shall have the power to rule on his or her own jurisdiction, the parties "clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability.")

### 1. **Biller's Claim for Constructive Wrongful Termination and Intentional Infliction of Emotional Distress**

Biller's wrongful termination claim necessarily arises out of the acts allegedly committed by TMS prior to the signing of the Severance Agreement. The claim also clearly arises out of the subject matter of the Severance Agreement – Biller's employment with TMS. Biller alleges that "Defendants harassed, intimidated, and threatened to terminate [his] employment, and as a result of this treatment, [he] reasonably concluded that the conditions of employment were intolerable, and was compelled to resign on September 17, 2007." [FAC ¶ 110, p. 78:5-11.] As such, Biller's claim for constructive wrongful termination arises out of Biller's employment with TMS and "arose at or prior to the date" the Severance Agreement was signed.

Similarly, Biller's claim for intentional infliction of emotional distress also concerns the subject matter of the Severance Agreement. The "extreme and outrageous" actions alleged by Biller all relate to TMS's attempts to enforce the confidentiality provision of the Severance Agreement. [*See* FAC ¶ 114, p. 79:13-15.] Therefore, Biller's claim for intentional infliction of emotional distress is a claim that arose after the execution of the Severance Agreement and relates to the "subject matter, interpretation, [and] application" of the agreement. Accordingly, both claims are subject to final and binding arbitration.

### 2. **Biller's Claim for Defamation Per Se**

Biller's claim for defamation per se is also subject to arbitration. In the First

Amended Complaint, Biller alleges that Defendants made "defamatory" statements in a press release Toyota issued following publication of Biller's Complaint by various news media. Specifically, Biller alleges Defendants falsely stated that:

> BILLER had made "completely false" accusations and gross mischaracterizations in this action; that BILLER has attempted to avoid his obligations as an attorney; that BILLER has repeatedly breached his ethical and professional obligations; that BILLER violated the attorney-client privilege without legitimate cause; and that ***BILLER did not honor his agreement***.

[FAC ¶ 119, pp. 81:22-82:3 (emphasis added).] Biller's own allegations again demonstrate that this claim necessarily relates to the subject matter, interpretation and application of the Severance Agreement. Each of the alleged "defamatory" statements relates to Biller's employment with TMS and TMS's attempts to enforce the terms of the Severance Agreement following his departure from TMS's employment. As such, Biller's claim for defamation per se is subject to final and binding arbitration.

### 3. **Plaintiffs' Civil RICO Claim**
#### a. *RICO Claims are Arbitrable*

The Supreme Court has held that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer,* 500 U.S. at 26. Although not all statutory claims are arbitrable, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). In examining the legislative history of RICO, the Supreme Court determined that "there is nothing in the text of the RICO statute

that even arguably evinces congressional intent to exclude civil RICO claims for the dictates of the Arbitration Act". *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987). As a result, RICO claims are arbitrable under the terms of the FAA. *Id.* at 238-42.

The arbitration clause contained in the Severance Agreement is sufficiently broad to encompass Plaintiffs' RICO claim because the acts Defendants allegedly engaged in all fall under one of the three prongs enumerated above. For example, Biller alleges that TMS obstructed justice by concealing and destroying evidence *during the time he was an employee of TMS*. These allegations necessarily arise out of Biller's employment with TMS. [*See*, *e.g.*, FAC, ¶ 30] Additionally, Biller alleges that Defendants filed fraudulent declarations in order to obtain a TRO against him *after the execution of the Severance Agreement*. [*See*, *e.g.*, FAC, ¶ 69] These allegations necessarily arise out of the conduct of Defendants after the Severance Agreement was executed and relate to the interpretation and application of the agreement. All of the alleged conduct of Defendants involves Biller's employment at TMS, or TMS's actions to enforce the provisions of the Severance Agreement after Biller resigned. Accordingly, Plaintiffs' RICO claim is subject to final and binding arbitration.

### b. *LDT Consulting Should Also Be Compelled To Arbitration*

Plaintiffs seek to avoid arbitration by adding LDT Consulting as a named plaintiff.[2] A nonsignatory to an arbitration agreement can be required to arbitrate a dispute involving its affiliate if the court determines that an alter ego relationship exists. *See Carpenters 46 N. Calif. Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 414-16 (9th Cir. 1996); *see also Retail Clerks Union, Local 428, AFL-*

---

[2] As explained in Defendants' Motion to Dismiss, the only claim asserted by LDT Consulting is civil RICO. LDT Consulting is even further removed than Biller from the alleged wrongful activity, and its civil RICO claims should be dismissed.

*CIO v. L. Bloom Sons Co., Inc.*, 173 Cal. App. 2d 701, 703, 344 P.2d 51 (1959). An alter ego relationship requires: (1) a unity of interest and ownership exists so that the separate personalities of the corporation and the individual controlling it no longer exist; and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice. *See Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443 (1985); *Webber v. Inland Inv., Inc.*, 74 Cal. App. 4th 884, 900, 88 Cal. Rptr. 2d 594 (1999). "The issue is not so much whether the corporate entity should be disregarded for all purposes or whether its very purpose was to defraud the innocent party, as it is whether in the particular case presented, justice and equity can best be accomplished and fraud and unfairness defeated by disregarding the distinct entity of the corporate form." *Communist Party of the United States v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993, 41 Cal. Rptr. 2d 618 (1995).

Plaintiffs' Complaint provides limited information about LDT Consulting; however, based on the information provided and judicially noticeable, for purposes of the agreement to arbitrate these disputes, LDT Consulting should be considered the alter ego of Biller. Biller is the Chief Executive Officer, Chief Financial Officer, and agent for service of process for LDT Consulting. [Statement of Corporate Information, RFJN, Ex. 4.] The only other officer of LDT Consulting is Biller's wife, who serves as the Secretary. [*Id.*] Biller and his wife are also the only directors of the corporation. [*Id.*]

Although Biller has gone through the formalities of incorporating his business, for all intents and purposes, he treats LDT Consulting as an extension of himself. In the First Amended Complaint, Plaintiffs allege that as a result of the TRO prohibiting Biller from disclosing privileged information, "BILLER was forced to close down LDT Consulting." [FAC ¶ 71, p. 50:5-12.] Biller treats his inability to disclose privileged information regarding TMS as tantamount to "shutting down LDT." Additionally, Plaintiffs allege that "BILLER, ***on behalf of himself and LDT Consulting***, never would have stipulated to the TRO if the

information now known to BILLER was disclosed in TMS's complaint and the declarations of Katz and McKenzie filed in support of the TRO." [FAC ¶ 72, p. 50:22-27 (emphasis added).] Again, Plaintiffs allege no distinction between Biller and LDT Consulting. In fact, Biller asserts that LDT Consulting is bound under the restrictions of the TRO even though LDT Consulting was not a party to the underlying action or named in the TRO. [*See* TRO, RFJN, Ex. 2.]

In this case, the doctrine of alter ego should be applied to prevent Plaintiffs from using the corporate form to thwart Defendants' right to arbitrate the underlying disputes. The only harm allegedly suffered by LDT Consulting necessarily arises out of Biller's employment with TMS and execution of the Severance Agreement. As such, Defendants should not be required to litigate disputes clearly covered by the arbitration agreement simply because Biller has named his company as a plaintiff.

### E. This Litigation Should Be Stayed Pending Arbitration.

Because of the enforceable arbitration provision covering all claims at issue, Defendants move to stay this litigation pending arbitration of this action. "A party desiring arbitration of a dispute first brought in a district court can seek a stay of the court proceedings under [9 U.S.C.] § 3 and a concurrent order under [9 U.S.C.] § 4 compelling arbitration." *Sink v. Aden Enter. Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003); *see also* 9 U.S.C. § 3.

The stay provision is mandatory. *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id.* (citing *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986)). Accordingly, given the clear and broad language of the arbitration provision of the Severance Agreement, Defendants respectfully request that this case be arbitrated and that the Court stay the litigation pending arbitration.

## IV. CONCLUSION

For the foregoing reasons Defendants respectfully request that the Court grant an order compelling Plaintiffs to arbitrate all remaining claims for relief pursuant to the Severance Agreement between Biller and TMS.

Dated:   October 5, 2009                     MORGAN, LEWIS & BOCKIUS LLP


By _____
   David L. Schrader
   Attorneys for Defendants