JOSEPH P. WOHRLE, ESQ. (State Bar No. 143550)
JEFFREY F. ALLEN, ESQ. (State Bar No. 204042)
IGNACIO ZARAGOZA, ESQ. (State Bar No. 250213)
ALLEN + WOHRLE, LLP
2800 28th Street, Suite 321
Santa Monica, CA 90405
Telephone: (310) 392-3355
Facsimile: (310) 392-8059
jwohrle@allenwohrle.com
jallen@allenwohrle.com

DIMITRIOS P. BILLER, ESQ. (State Bar No. 142730)
906 Kagawa Street
Pacific Palisades, CA 90272
Telephone: (310) 459-9870
Facsimile: (310) 459-9879
biller_ldtconsulting@verizon.net

Attorneys for Plaintiffs,
    DIMITRIOS P. BILLER; and LITIGATION DISCOVERY & TRIAL
    CONSULTING, INC., a California corporation

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIOS P. BILLER; LITIGATION DISCOVERY & TRIAL CONSULTING, INC., a California corporation,<br><br>         Plaintiffs,<br><br>    v.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; CHRISTOPHER REYNOLDS; JANE HOWARD MARTIN; ERIC TAIRA; DIAN OGILVIE; ALICIA McANDREWS,<br><br>         Defendants. | Case No.: CV09-5429-GHK (RZx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF JEFFREY F. ALLEN<br><br>BEFORE THE HONORABLE GEORGE H. KING<br><br>Date:        November 9, 2009<br>Time:        9:30 A.M.<br>Place:       Courtroom 650<br><br>[EVIDENTIARY OBJECTIONS SUBMITTED SEPARATELY AND CONCURRENTLY HEREWITH] |

# **TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . 2

II.  FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . 2

    A.  Defendants' motion is an attempt to avoid
    Judge Ward's Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Defendants have not submitted any evidence
    in support of their motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  The Severance Agreement contains a liquidated
    damages clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.  Defendants' motion is nothing more than a motion to seal. . . . . . 8

    E.  The proceedings initiated by Defendants in state
    court do not govern here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    F.  The public interest in this case is obvious. . . . . . . . . . . . . . . . . . 9

III.  DEFENDANTS HAVE FAILED TO ESTABLISH ANY OF
THE FACTORS JUSTIFYING THE ISSUANCE OF THE
PROPOSED PRELIMINARY INJUNCTION. . . . . . . . . . . . . . . . . . . . . . 10

    A.  A preliminary injunction is an extraordinary remedy. . . . . . . . . . 10

    B.  Defendants fail to meet their burden on every relevant factor. . . 10

        1.  Defendants are not likely to prevail on the merits. . . . . . . 11

        2.  Defendants cannot show imminent or irreparable harm. . 12

            a.  Defendants' request is founded upon
            a perceived speculative threat of harm. . . . . . . . 14

            b.  Defendants have submitted no
            supporting evidence. . . . . . . . . . . . . . . . . . . . . . . 16

i

c.  Defendants claim the severance agreement is enforceable, and compensatory damages are available pursuant to its terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.  Balance of Equities is in favor of Plaintiffs. . . . . . . . . . . . . . . . . 18

D.  The public's interest, and the interests of nonparties, would be ignored if Defendants' motion is granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

DECLARATION OF JEFFREY F. ALLEN.  . . . . . . . . . . . . . . . . . . . . . 22

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3

**FEDERAL CASES**

4

Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.

5

868 F.2d 1085 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

6

Caribbean Marine Services Co., Inc. v. Baldrige

7

844 F.2d 668 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8

Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.

178 F.3d 943 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

9

City of Angoon v. Marsh

10

749 F.2d 1413 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

11

City of Los Angeles v. Lyons

461 U.S. 95; 103 S.Ct. 1660; 75 L.Ed. 2d 675 (1983) . . . . . . . . . . . . . . . . . . 12

12

13

Clark v. American Commerce National Bank

974 F.2d 127 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.

15

774 F.2d 1371 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16

Friedman v. 24 Hour Fitness USA, Inc.

17

580 F.Supp.2d 985 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18

Goldie's Bookstore, Inc. v. Sup.Ct.

739 F.2d 466 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

19

20

Mazurek v. Armstrong

520 U.S. 968; 117 S.Ct. 1865; 138 L.Ed.2d 162 . . . . . . . . . . . . . . . . . . . . . 9

21

Midgett v. Tri-County Metro. Transp. Dist. of Oregon

22

254 F.3d 846 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

23

Pansy v. Borough of Stroudsberg

24

23 F.3d 772 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25

Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.

320 F.3d 1081 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

26

Sampson v. Murray

27

415 U.S. 61; 94 S.Ct. 937; 39 L.Ed. 166 (1974) . . . . . . . . . . . . . . . . . . . . 12, 13

28

iii

Tornay v. United States
840 F.2d 1424 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15, 16

United States v. Hodgson
492 F.2d 1175 (10th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Weaver v. Florida Power & Light Co.
172 F.3d 771, 773 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

West Point-Pepperell, Inc. v. Donovan
689 F.2d 950, 956 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Winter v. Natural Resources Defense Counsel
U.S.; 129 S.Ct. 365; 172 L.Ed.2d 249 (2008) . . . . . . . . . . . . . . . . . . . . 10-12, 17, 18

iv

I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants' motion improperly requests this Court to circumvent orders directly applicable to this case entered by the Hon. T. J. Ward in *Lopez v. Toyota Motor Corp. et al.* (E.D. Tex.). Defendants' motion also is unsupported by any evidence, omits material facts, misapplies or ignores applicable law, and is based entirely upon false, conclusory statements. Defendants' motion also is improper because it relies upon a severance agreement Mr. Biller executed, which Defendants contend is enforceable. Defendants ignore the liquidated damages clause contained in the severance agreement. The liquidated damages clause provides a monetary remedy for the breaches Defendants allege Mr. Biller committed, and will commit. Accordingly, the liquidated damages clause precludes Defendants' request for injunctive relief.

In short, Defendants' motion is brought for an improper purpose, is devoid of factual and legal support, is precluded by their reliance on the severance agreement, and appears intended to harass Plaintiffs and delay this action. Defendants' motion is nothing more than their latest attempt to seal the pleadings, silence Mr. Biller, and prevent the public from becoming aware of the crimes and frauds they have committed, and which they continue to commit. Accordingly, Defendants' motion must be denied.

II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Defendants' motion is an attempt to avoid Judge Ward's Orders.

On September 30, 2009, the Hon. T. J. Ward issued a temporary restraining order in *Lopez et al. v. Toyota Motor Corp. et al.*, No. 2:09-CV-292 (TJW) (E.D. Tex.) ("*Lopez*"). *Allen Decl.*, Ex. A. The TRO states that

2

"the Court finds there is an immediate threat of irreparable harm in that, under the allegations, a threat exists that evidence material to this case would be destroyed or altered." *Id.* Based upon the Court's finding, it ordered Defendants to issue litigation hold notices and preserve all documents in any form related to product liability and crashworthiness issues. *Id.*

On October 14, 2009, Judge Ward issued a second order continuing and expanding the obligations created by the original TRO. *Allen Decl.*, Ex. B. Judge Ward's second order, by its terms, expressly applies to this case. Specifically incorporating the terms of the TRO, the second order states that Defendants:

> "shall continue to maintain and preserve documents pursuant to their current Notices to Preserve Documents issued as a result of the plaintiffs' complaint filed in this action, plaintiffs' complaint filed in *Cole, et al. v. Toyota Motor Corporation, et al.*; C.A. 2:09-cv-268; in the U.S. District Court, Eastern District of Texas, ('Cole Litigation') and in connection with the ongoing litigation by and between Dimitrios Biller and TMS and/or TMC ('Biller Litigation') and shall advise Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor North America, Inc. to comply with their respective Notice(s) to Preserve in this case, the Cole Litigation and the Biller Litigation." *RFJN*, Ex. B (emphasis added).

On October 14, 2009, Judge Ward also issued a third order. *Allen Decl.*, Ex. C. Judge Ward's third order established a procedure pursuant to which the Defendants in *Lopez* can inspect documents contained in four boxes Mr. Biller delivered to Judge Ward's court on October 1, 2009. *Id.*

Defendants agreed to the procedure expressed in Judge Ward's third order. *Id.* In relevant part, the third order states:

"1.  On or before October 14, 2009, IKON Document Solutions, Inc. ('IKON') shall take possession of the Documents . . . . IKON shall Bates stamp the original Documents.

\* \* \*

3.  . . . IKON shall make a copy of the Bates numbered original Documents and create a watermarked image versio of the Documents . . . .  The imaged Documents shall be 'read only' and made available for TMS' review in a secure database on or before October 20, 2009.  . . .  The Documents will remain in the Court's possession until further ordered.

4.  Only in-house counsel for TMS and counsel of record for TMS may review the Documents in the secure database.  A log of individuals who have access to reviewing the Documents on the secure database shall be maintained by IKON and shall be turned over to the Court upon written request. . . . .

5.  In-house counsel for TMS and counsel of record for TMS shall have permission to physically inspect the copies of the Documents subject to the following: (1) an IKON representative shall accompany and stay with the Documents at all times during the physical inspection; (2) IKON shall maintain a log of the individuals who physically inspect the Documents, and this log shall be turned over to the Court upon written request; and (3) no copier, camera, pda or recording device of any kind shall be permitted during the physical inspection.  The cost of IKON's services shall be paid by TMS.

4

6.  TMS shall serve the Court and counsel for plaintiffs with a privilege document log pursuant to Fed.R.Civ.P. 26(b)(5), pertaiing to the Documents on or before December 11, 2009.
* * *

8.  Any documents that are not subject to any objections raised by TMS as to their production or disclosure and that are otherwise relevant to the matters raised by Plaintiffs in their complaint, will be produced to counsel for Plaintiffs subject to an Agreed Protective Order . . . .

9.  If the Court desires testimony of Dimitrios Biller concerning issues in this matter, Mr. Biller will be ordered to appear for testimony."  *Allen Decl.*, Ex. C.

Defendants' motion acknowledges Judge Ward's three orders only in passing, and fails to mention the applicability of the second order directly to this case, or Judge Ward's indication that "Mr. Biller will be ordered to appear for testimony."  *Allen Decl.*, Ex. C.  Instead, Defendants contend, without any factual support, that "TMS cannot comment here on those documents [contained in the four boxes] beyond saying that the overwhelming majority will be subject to one or more privileges."  *Defendants' Motion*, p. 10, lines 14-15.

On October 16, 2009, Defendants also filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate the cases before Judge Ward with this case in the Central District.  *Allen Decl.*, Ex. D.  In their motion to consolidate, Defendants assert that this case is "factually-identical" to the cases before Judge Ward.  *Id.*, p. 11.  Defendants filed their motion to consolidate several days after Judge Ward issued his three orders.  *Id.* Defendants' motion to consolidate did not inform the Judicial Panel on

Multidistrict Litigation of Judge Ward's three orders, or the obligations imposed thereby.

**B.    Defendants have not submitted any evidence in support of their motion.**

Defendants' motion is premised upon their unsupported contention that Plaintiffs have disclosed "Toyota's privileged and confidential information." *Defendants' Motion*, p. 1, line 8.  However, Defendants failed, once again, to submit any evidence to substantiate their claims that any information is "privileged and confidential."  Defendants had an opportunity to submit evidentiary support for their claims given that the four boxes of documents Mr. Biller lodged in Texas have been available to them for weeks. *Allen Decl.*, Exs. B and C.  Defendants chose not to file any evidence establishing that any of the documents are privileged or confidential.

Instead, in support of their motion, Defendants submitted only two declarations, *i.e.*, the first by David L. Schrader, the second by Alan C. Carlson, both counsel for Defendants.  The Schrader and Carlson declarations simply attach pleadings from other cases, as did the Request for Judicial Notice submitted by Defendants.  Defendants offered absolutely no evidence in support of their claims that:  the attorney-client privilege attaches to any documents or information at issue; any documents or information are trade secrets or confidential in nature; or Plaintiffs pose any threat to destroy or conceal information and documents.  In fact, to the contrary, Judge Ward's orders make clear that "a threat exists that evidence material to this case would be destroyed or altered [by Defendants]." *Allen Decl.*, Ex. A.

6

Instead of supporting their claims of privilege with evidence, as they must, Defendants improperly attempt to shift this burden to Plaintiffs. Specifically, Defendants seek to enjoin Plaintiffs "from filing with this Court any document that contains or cites to privileged and/or confidential documents or information of Toyota unless relief is first sought and granted to file such document or information under seal." *Defendants' Motion*, p. 2, lines 16-19.

Defendants also seek to require Plaintiffs "to provide Toyota with a full and complete, detailed accounting of any and all documents, materials, information, data and other compilations, whether in hard copy or electronically stored, belonging or relating to Toyota that were removed, copied, duplicated, downloaded, forwarded or otherwise acquired by [Plaintiffs]." *Defendants' Motion*, p. 2, lines 27-28; p. 3, lines 1-3.

Defendants ignore entirely their burden of establishing the applicability of the privilege. *See, e.g., Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) ["The burden of establishing that the attorney-client privilege applies . . . rests with the party asserting the privilege."]. In fact, Defendants failed to submit any evidence establishing that any privilege applies.

Defendants also failed to submit any evidence in support of the other conclusory allegations contained in their motion.

C.     **The Severance Agreement contains a liquidated damages clause.**

In support of their motion, Defendants rely upon the terms of a severance agreement Mr. Biller executed in September 2007.  Plaintiffs contend that the severance agreement is unenforceable because Mr. Biller lacked capacity to enter into it, and it violates public policy. *Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration*, §§ II and III. However, Defendants contend the severance agreement is enforceable.

7

1  Defendants' motion conveniently ignores the liquidated damages
2  clause contained in the severance agreement.  Specifically, the liquidated
3  damages clause states:

4  "Associate [i.e., Mr. Biller] agrees that any disclosure by
5  Associate . . . in violation of the foregoing shall constitute and
6  be treated as a violation of this Agreement.  As the damages
7  TMS would suffer if this provision were violated would be
8  difficult to calculate, Associate promises to pay TMS Two
9  Hundred Fifty Thousand and no cents ($250,000.00) for each
10  violation."  *FAC*, Ex. 2.

11  As discussed more fully below, the liquidated damages clause
12  precludes Defendants' request for injunctive relief.

13

14  **D.     Defendants' motion is nothing more than a motion to seal.**

15  Defendants' motion is nothing more than a motion to seal.  As such, it
16  is Defendants' <u>fourth</u> direct attempt to silence Plaintiffs since this case was
17  filed.  These attempts include: (1) an ex parte application to seal the
18  complaint (which was denied); (2) an ex parte application for an order
19  shortening time for the hearing of a motion to seal the complaint (which was
20  denied); (3) a regularly noticed motion to seal the complaint (which was
21  denied); and (4) the pending motion.  Defendants' motion to compel
22  arbitration also is an attempt to prevent the public from becoming aware of
23  Defendants' conduct.

24

25  ///
26  ///
27  ///
28

8

E.   **The proceedings initiated by Defendants in state court do not govern here.**

Defendants' motion relies heavily upon the proceedings in the state court lawsuit TMS filed against Mr. Biller. *Defendants' Motion*, pp. 7-8, 13. Defendants' reliance is misplaced.

First, Defendants' motion ignores Plaintiffs' claims that the state court lawsuit is a "sham", and was manufactured by Defendants using fraudulently obtained and materially misleading declarations by two lawyers hired by Defendants to spy on and entrap Mr. Biller. *FAC, ¶¶ 69, 70; Plaintiffs' Opposition to Defendants Motion to Dismiss RICO Claims.* As such, Defendants' repeated reliance upon the state court proceedings does nothing but perpetrate a fraud upon a fraud. Moreover, Judge John L. Segal, who currently presides over the state court proceedings, has never ruled that Mr. Biller ever violated the TRO, preliminary injunction, or the Rules of Professional Responsibility.

Also, nothing that has happened in state court has any effect, preclusive or otherwise, in this Court. Judge Segal recognized both the importance of this case to the public, and the vast difference between the state court action and this case, stating:

> "This case as opposed to the federal cases, has nothing to do with protecting the public from danger . . . . The Federal Court has made and will continue to make orders, and we all have to comply with them. I'm at the bottom of the judicial food chain."
> *Allen Decl.*, Ex. E.

F.   **The public interest in this case is obvious.**

The public's interest in this case is obvious, as evidenced by the following: (1) the intense media scrutiny of Plaintiffs' allegations; (2)

9

1  Defendants' numerous press releases directly attacking Mr. Biller (*Allen*
2  *Decl.*, Ex. F); (3) the opposition to Defendants' motion to seal filed by
3  Bloomberg News; (4) the "rash of copy-cat lawsuits" pointed out by
4  Defendants; and (5) the three orders issued by Judge Ward.
5
6                                      III.
7  **DEFENDANTS HAVE FAILED TO ESTABLISH ANY OF THE FACTORS**
8  **JUSTIFYING THE ISSUANCE OF THE PROPOSED PRELIMINARY**
9                              **INJUNCTION.**
10
11 **A.     A preliminary injunction is an extraordinary remedy.**
12         When a preliminary injunction is sought, the burden of persuasion
13 rests with the party seeking such relief.  *West Point-Pepperell, Inc. v.*
14 *Donovan*, 689 F.2d 950, 956 (11th Cir. 1982).  Because a preliminary
15 injunction is an extraordinary remedy, courts require the movant to carry its
16 burden of persuasion by a "clear showing."  *Mazurek v. Armstrong*, 520 U.S.
17 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997); *City of Angoon v. Marsh*
18 749 F.2d 1413, 1415 (9th Cir. 1984).  Defendants have failed to meet their
19 burden because they have not submitted any evidence in support of their
20 motion.
21
22 **B.     Defendants fail to meet their burden on every relevant factor.**
23         In order to obtain a preliminary injunction, Defendants must establish
24 that they "are likely to succeed on the merits, that [they are] likely to suffer
25 irreparable harm in the absence of preliminary relief, that the balance of
26 equities tips in [their] favor, and that an injunction is in the public interest."
27 *Winter v. Natural Resources Defense Counsel*, --- U.S. —, 129 S.Ct. 365,
28

376, 172 L.Ed.2d 249 (2008). Defendants have failed to meet their burden as to each of these factors.  Thus, Defendants' motion should be denied.

### 1.    Defendants are not likely to prevail on the merits.

Defendants offer no support, evidentiary or otherwise, for their conclusion that "it is unlikely that Mr. Biller will be able to prevail on . . . his RICO claims [because] they are procedurally and substantively flawed – his claims bereft [sic] of any facts. . . ." *Defendants' Motion*, p. 22, lines 17-18. Defendants' conclusion appears premised upon an assumption that they will prevail on their motion to dismiss Plaintiff's RICO claim.  However, Defendants' reliance is misplaced because a Rule 12(b)(6) motion merely tests the sufficiency of the allegations of the complaint and, in fact, assumes their truth.  *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 989 (C.D. Cal. 2008).  Accordingly, Defendants' argument fails.

Defendants also conclude that "[a]s for Mr. Biller's claims for constructive termination and emotional distress, he relinquished those claims in his Severance Agreement." *Defendants' Motion*, p. 22, lines 20-22.  Once again, Defendants submitted no evidence to support this assertion.  Moreover, Defendants wholly ignore Plaintiffs' assertion, and the evidence supporting it, that the severance agreement is unenforceable because Mr. Biller lacked capacity to enter into it and it violates public policy.  This issue was briefed extensively in Plaintiffs' opposition to Defendants' motion to compel arbitration.  *See Plaintiffs' Opposition to Motion to Compel Arbitration*, §§ II and III.

Defendants also conclude that "Mr. Biller will likely argue in opposition to this motion that he is likely to prevail due to the so-called crime fraud exception." *Defendants' Motion*, p. 22, fn. 7.  Defendants summarily conclude that "Mr. Biller cannot meet the prerequisites necessary to invoke

the [crime-fraud] exception." *Id.* Again, Defendants offer no argument or evidence to support this conclusion.  It is well-settled that a party seeking a preliminary injunction must show that it is likely to prevail on the merits upon evidence.  *See, e.g., Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985) [district court erred in granting preliminary injunction where, *inter alia*, party seeking same did not show probability of success on merits because evidence it proffered was inadmissible under parol evidence rule].  Accordingly, Defendants conclusory arguments do not meet their burden.

There is no support for Defendants' assertion that they will prevail on the merits, especially where, as here, Defendants have not yet answered or asserted defenses to the First Amended Complaint ("FAC").  That Defendants have not yet answered the allegations favors denying their motion.  Defendants affirmative defenses may very well provide an alternative legal remedy to the relief they seek through their motion.  It is well-established that injunctive relief will be denied where an alternative legal remedy will provide the same relief.  *See, e.g., Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).

**2.    Defendants cannot show imminent or irreparable harm.**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter, supra*, at 375-76. As such, a preliminary injunction may not be granted based upon a "possibility" of irreparable harm, even if plaintiffs demonstrate a strong likelihood of prevailing on the merits. *Id.* The party seeking injunctive relief must demonstrate "immediate threatened harm." *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Establishing a mere risk of irreparable harm in the future is not enough. The

harm must be shown to be imminent.  *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001).

Plaintiffs' complaint was filed on July 24, 2009 – over three months ago.  The simple fact that Defendants waited so long to request injunctive relief undermines their claim that they will suffer imminent harm. Defendants' failure to seek injunctive relief for over three months alone justifies denying their request.

However, Defendants' motion also should be denied because the purported harms they claim to fear are speculative; their request is founded upon a perceived threat of harm based upon past conduct and is not imminent; the harm they posit is self-inflicted; and adequate compensatory damages will be available to Defendants in the ordinary course of litigation.

Because speculative losses are insufficient to support a preliminary injunction, there must be evidence of actual irreparable injury.  *See, e.g., Goldie's Bookstore, Inc. v. Sup. Ct*. 739 F.2d 466, 472 (9th Cir. 1984) [findings of loss of goodwill and "untold" customers held speculative]; *Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.*, 868 F.2d 1085 (9th Cir. 1989) [loss of contract held insufficient injury where no evidence that contract would have been profitable].  Similarly, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660. 75 L.Ed.2d 675 (1983) (internal quotes omitted).  Also, the fact that adequate compensatory damages will ultimately be available in the ordinary course of litigation weighs heavily against a claim of "irreparable" harm.  *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

### a. Defendants' request is founded upon a perceived, speculative threat of harm.

The party seeking a preliminary injunction must provide the Court with evidence of actual irreparable injury; speculative losses are insufficient to support such relief. *Goldie's Bookstore, Inc., supra at* 472 (9th Cir. 1984); *Big Country Foods, Inc., supra at* 1085.

In *Big Country Foods, Inc., supra,* the plaintiff, after unsuccessfully bidding for a contract to supply milk to the defendant, a school district, sought to enjoin the school district from entering into a contract with any supplier other than the plaintiff. The plaintiff argued that Alaska statutory procedures used to award the contract to a third party violated the U.S. Constitution's commerce clause and federal statutes governing the school district's procurement of milk. The plaintiff's unsuccessful bid was in the amount of $360,000. *Id.* at 1086-87.

In seeking a preliminary injunction, the plaintiff argued that the irreparable injury it would suffer in the absence of injunctive relief was the loss of the $360,000 contract. Such loss was irreparable, the plaintiff argued, because even if it won on the merits, Alaska law provided no monetary damages for the type of challenge that it made against the defendant-school district's bidding process. The district court denied the plaintiff's motion for a preliminary injunction.

The Ninth Circuit affirmed the district court's denial, holding:

"Big Country does not articulate the form of injury that 'loss of a contract' will cause it to incur, apart from its ambiguous assertion late in its brief that '[i]n the absence of injunctive relief, Big Country will lose a $360,000 contract, a major source of income for a small company.' Income is, of course, not the same as profits. Yet we assume, in light of this cryptic

14

1   reference and Big Country's argument with respect to the
2   unavailability of monetary damages under Alaskan law, that Big
3   Country is referring to pecuniary injury -- lost profits. If so, we
4   need not decide if Big Country has an adequate remedy at law
5   for this injury. *The record is barren of evidence* of lost profits.
6   Big Country merely filed an affidavit indicating that its bid was
7   for $360,000. The gross amount of a contract in no way
8   reflects the amount of profit Big Country may have realized had
9   it been awarded the contract. As far as we know, Big Country
10  may have lost money on the contract." *Id.* at 1088 (emphasis
11  added).

12      Here, Defendants have provided no evidence evidencing the damages
13  they allegedly will incur if Plaintiffs are not enjoined as requested.
14  Defendants merely argue, generally, that they will suffer "loss of business
15  reputation and good will" and "loss of confidential, privileged, or trade secret
16  information." *Defendants' Motion*, p. 14, lines 4-6.

17      With respect to reputation and goodwill, the only harm that would
18  befall Defendants in the absence of the preliminary injunction they seek
19  would be disclosure of documents and information that prove the acts of
20  which Plaintiffs complain. Put another way, if Defendants have committed
21  the acts alleged in the FAC, their reputation and goodwill will not be harmed
22  by disclosure[1] because such harm is self-inflicted. Where the harm
23  complained of is self-inflicted, it does not qualify as irreparable. *Salt Lake*
24  *Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir.
25  2003).

26
27

28      [1]On the other hand, if Defendants were innocent, then, presumptively, they would not only welcome disclosure, they would disclose the documents themselves in an effort to defend the allegations leveled against them.

**b.    Defendants have submitted no supporting evidence.**

Moreover, Defendants have not provided any evidence showing that any information is confidential or trade secret information.  Defendants have had ample opportunity to do so.  Specifically, Defendants should be in possession of all the documents, ESI, reports, attachments, and other materials that Mr. Biller created, drafted, sent, received, stored, and maintained on the computer TMS assigned to him and that were stored on the share drive for the Product Liability Group in the Legal Services Group of TMS.  Thus, Plaintiffs should not be burdened with the task of creating a log of documents in their possession.  No law or evidence supports this request.  In fact, the burden is on Defendants to create a log.  If Defendants cannot do so because they destroyed the documents, then that is a circumstance of their own creation which should not burden Plaintiffs.

Defendants' bear the burden in the first instance to establish, with specific facts, that documents or communications are privileged or confidential. *Tornay, supra*, 840 F.2d at 1426.  One method to accomplish this is to create a privilege log so that the propriety of the claimed privileges can be evaluated by the Court.  This procedure is consistent with Judge Ward's October 14, 2009 order. *Allen Decl.*, Exs. B and C.  Here, Defendants had the opportunity to create a privilege log regarding the documents Mr. Biller deposited with Judge Ward, yet they failed to do so.  Instead, Defendants improperly seek to shift the burden to Plaintiffs of establishing that unspecified documents are not privileged.  No law supports Defendants' request, which violates the axiom that requests for injunctive relief must be supported by evidence.

In fact, Defendants' request runs afoul of the law governing privileged communications.  It is well-settled that, "[t]he burden of establishing that the attorney-client privilege applies . . . rests with the party asserting the

16

privilege." *Tornay, supra,* 840 F.2d at 1426.  A party seeking to invoke the attorney-client privilege must provide the Court "with 'an explanation of how the information . . . fits within the privilege.'"  *Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir. 1992) (citation omitted).  Moreover, "blanket assertions of the privilege are 'extremely disfavored.'"  *Id.* (citation omitted).  "The privilege must ordinarily be raised as to each record . . . to allow the court to rule with specificity."  *Id.* (emphasis added; citing *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir. 1974)).

Despite their burden, Defendants simply make a blanket assertion that the information within the purview of the preliminary injunction they seek contains privileged communications.  Defendants fail to present any evidence in support of their allegation that the attorney-client privilege applies to any of the information they seek to enjoin from disclosure.  Rather, Defendants simply ask this Court to assume that the information they seek to enjoin Plaintiffs from disclosing constitutes privileged communications.  In short, Defendants have failed to meet their burden to establish that the privilege applies to *any* of the information within the purview of their proposed preliminary injunction.

c.   **Defendants claim the severance agreement is enforceable, and compensatory damages are available pursuant to its terms.**

The severance agreement is the centerpiece of Defendants' motion.  As stated, the severance agreement contains a liquidated damages clause governing the conduct that Defendants seek to enjoin.  The liquidated damages clause states:

"Associate [*i.e.,* Plaintiff Biller] agrees that any disclosure by Associate . . . in violation of the foregoing shall constitute and

17

1  be treated as a violation of this Agreement.  As the damages
2  TMS would suffer if this provision were violated would be
3  difficult to calculate, Associate promises to pay TMS Two
4  Hundred Fifty Thousand and no cents ($250,000.00) for each
5  violation."  *FAC*, Ex. 2.

6      Thus, if Defendants prevail on their assertion that the severance
7  agreement is valid, they will have a right to monetary compensation for Mr.
8  Biller's commission of the acts they seek to enjoin.  On the other hand, if
9  Plaintiffs prevail on their assertion that the severance agreement is
10  unenforceable, Defendants' motion must fail since they have no basis for
11  the preliminary injunction they seek.  Either way, Defendants' motion fails.

12

13  **C.**   **Balance of Equities is in favor of Plaintiffs.**

14      Defendants assert that "the injunctive relief requested by TMS does
15  not impose any additional obligation on Mr. Biller that he is not already
16  under."  *Defendants' Motion*, p. 21, lines 25-26.  Accordingly, Defendants
17  admit that the relief they seek is unnecessary.  As such, Defendants cannot
18  establish that "the balance of equities tips in [their] favor."  *Winter*, *supra*,
19  129 S.Ct. at 376.

20      As stated, Defendants admit that meaningful safeguards to prevent
21  Plaintiffs from committing acts they seek to enjoin already exist.
22  Defendants' admission underscores the improper intent of their motion, *i.e.*,
23  to silence Plaintiffs and prevent Mr. Biller from testifying in Texas pursuant
24  to Judge Ward's orders.  The effect of Defendants' relief, if granted, would
25  be to circumvent Judge Ward's orders and present Mr. Biller with two
26  conflicting orders.  This result is inequitable and supports denying
27  Defendants' motion.

28

18

**D.    The public's interest, and the interests of nonparties, would be ignored if Defendants' motion is granted..**

As Defendants point out, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. At 376-77.  As such, Defendants must meet their burden of establishing that the harm they will sustain in the absence of an injunction will outweigh the interests of the public. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999).  Defendants cannot meet this burden.  Plaintiffs' allegations are vital to public health and safety.  Defendants expressly argue that Plaintiffs' allegations have spurred a rash of lawsuits. *Defendants' Motion*, p. 8, lines 12-28; p. 9, lines 1-11.  This fact alone disproves Defendants' blanket assertion that the public, or nonparties to this lawsuit, have no interest in the allegations.

The public's right to know and interest in the allegations contained in the FAC are undeniable.  First, there are plaintiffs in lawsuits pending against Defendants in United States Federal courts. *Defendants' Motion*, pp. 8-9.  These litigants have an interest in, and a right to know, what happens in this case.  These litigants should not be allowed to be cheated and told lies in the discovery process; they should obtain all the relevant and potentially relevant information that may lead to the discovery of admissible evidence.  Second, the United States National Highway Traffic Safety Administration ("NHTSA") obviously has a right to know if defendants have submitted false evidence or concealed evidence that was requested by NHTSA.  Finally, the Courts of the United States cannot be used wrongfully by defendants to systematically prevent claimants from fairly and legally redressing their rights.

19

1       Moreover, the intense media scrutiny this case has engendered
2   evidences the public's interest in the allegations Plaintiffs have asserted.
3   Media representatives even filed an opposition to Defendants' second
4   motion to seal the complaint, claiming that the public has a right to know
5   about these proceedings.  *See Opposition of Bloomberg, LP to Defendants'*
6   *Motion to Seal Complaint*.

7       Also, the fact that Judge Ward already has indicated that Mr. Biller
8   likely will be called to testify regarding documents lodged in Texas
9   evidences that nonparties to this lawsuit have a direct interest in evidence
10  and information Defendants seek to hide pursuant to this motion.  The
11  importance of the information and evidence Defendants seek to prevent
12  from becoming known simply is too important to bury.

13      Defendants incorrectly state that "the requested relief would only
14  affect Mr. Biller -- no organization or other individual would be required to
15  comply with the injunction."  *Defendants' Motion*, p. 24, lines 4-5. However,
16  Defendants present no evidence in support of their argument that the
17  requested relief would have no effect on nonparties.  Judge Ward's rulings
18  clearly evidence that nonparties to this lawsuit have a clear interest.  As
19  such, enjoining Plaintiffs from complying with Judge Ward's orders would
20  have a direct impact on nonparties to this lawsuit.

21      Additionally, the very nature of the allegations contained in the FAC
22  demonstrate Defendants' propensity to abuse the litigation process,
23  conceal, withhold, and destroy relevant evidence and information, and
24  illegally and unfairly attempt to gain advantages over adversaries.  Allowing
25  Defendants to hide information by enjoining Plaintiffs from properly
26  disclosing or presenting it only will encourage Defendants' to continue their
27  pattern of illegal and fraudulent activity.

28

20

1    The only harms Defendants appear to allege they will suffer are:  (1)
2  the "loss of business reputation and good will; and (2) the loss of
3  confidential, privileged, or trade secret information." *Defendants' Motion*, p.
4  14, lines 4-5.  The first alleged harm, for which Defendants failed to present
5  any evidence, was not made with the required specificity.  "`Broad
6  allegations of harm, unsubstantiated by specific examples or articulated
7  reasoning,' do not support a good cause showing." *Pansy v. Borough of*
8  *Stroudsberg, 23 F.3d 772,* 786 (3ʳᵈ Cir. 1994).  The second alleged harm
9  requires that Defendants first establish that the privileges apply to
10  documents, information and communications.  As shown, Defendants failed
11  to satisfy that burden.

12

13                              **IV.**

14                         **CONCLUSION**

15    For the foregoing reasons, Plaintiffs respectfully request that this
16  Court deny Defendants' request for a preliminary injunction.

17

18  Dated: November 9, 2009          ALLEN + WOHRLE, LLP
19                                   JOSEPH P. WOHRLE
                                     JEFFREY F. ALLEN
20                                   IGNACIO ZARAGOZA

21
                                     By:
22                                        JEFFREY F. ALLEN
23                                   Attorneys for Plaintiffs, DIMITRIOS P.
                                     BILLER; and LITIGATION DISCOVERY
24                                   & TRIAL CONSULTING, INC., a
                                     California corporation

25

26

27

28

21

## DECLARATION OF JEFFREY F. ALLEN

I, JEFFREY F. ALLEN, DECLARE:

1.     I am, and continuously since 1999 have been, an active Member of The State Bar of California.  I also am a Member of the bar of this Court. I am a partner of Allen + Wohrle, LLP, counsel of record for Plaintiffs in the above-captioned matter.  Except as otherwise indicated, I have personal knowledge of the matters stated herein.

2.     Attached to this opposition as Exhibit "A" is a true copy of a September 30, 2009 order issued in *Lopez et al. v. Toyota Motor Corporation et al.*, Case No. 2:09-CV-292, by the Hon. T. J. Ward, United States District Court Judge, Eastern District of Texas, Marshall Division.  I personally obtained this document by accessing PACER.

3.     Attached to this opposition as Exhibit "B" is a true copy of an October 14, 2009 order issued in *Lopez et al. v. Toyota Motor Corporation et al.*, Case No. 2:09-CV-292, by the Hon. T. J. Ward, United States District Court Judge, Eastern District of Texas, Marshall Division.  I personally obtained this document by accessing PACER.

4.     Attached to this opposition as Exhibit "C" is a true copy of an October 14, 2009 order issued in *Lopez et al. v. Toyota Motor Corporation et al.*, Case No. 2:09-CV-292, by the Hon. T. J. Ward, United States District Court Judge, Eastern District of Texas, Marshall Division.  I personally obtained this document by accessing PACER.

5.     Attached to this opposition as Exhibit "D" is a true copy of Defendants' Brief In Support of Motion of Toyota Motor Corporation et al., For Transfer of Actions to the Central District of California Pursuant to 28 U.S.C. § 1407 for Coordinated and Consolidated Pretrial Proceedings.

6.     Attached to this opposition as Exhibit "E" is a true copy of the Reporter's Transcript of Proceedings of September 25, 2009 in *Toyota*

22

*Motor Sales U.S.A., et al. v. Dimitrios P. Biller*, Los Angeles Superior Court Case No. SC 100501.

7.     Attached to this opposition as Exhibit "F" is a press release issued by Defendants on October 12, 2009, wherein they retracted their false statement in a prior press release dated September 10, 2009, which appears as Exhibit "4" to the FAC.  I personally obtained the October 12, 2009 press release by accessing The Toyota Defendants' web-site, the address of which appears on Exhibit "F".

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration was executed on November 9, 2009 at Santa Monica, California.

JEFFREY F. ALLEN

C:\Shared Data Store\Data\Biller\v. TMS\Pleadings\jw09-p-opposition to injx motion (11-05).wpd

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RAUL LOPEZ AND DIANA LOPEZ,<br>INDIVIDUALLY AND AS NEXT FRIEND<br>OF A.L., A MINOR,<br><br>    *Plaintiff*,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION,<br>TOYOTA MOTOR SALES, U.S.A., INC.,<br>CHRISTOPHER REYNOLDS,<br>JANE HOWARD MARTIN,<br>ERIC TAIRA,<br>DIAN OGILVIE,<br><br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    CIVIL ACTION NO. 2:09-CV-292 |

## TEMPORARY RESTRAINING ORDER

After considering Plaintiffs' Ex Parte Motion Ordering Litigation Holds on Various Toyota Litigation Issues Under 18 U.S.C. § 1964 (a), the Court finds there is an immediate threat of irreparable harm in that, under the allegations, a threat exists that evidence material to this case would be destroyed or altered.   It is hereby ordered that defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Christopher Reynolds, Jane Howard Martin, Eric Taira, and Dian Ogilvie, together with their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them with knowledge of this order, shall:

1. Issue litigation holds on all documents in any form pertaining to any make, model or year platform vehicle;

2. Issue litigation holds on all documents in any form pertaining to any non-production vehicle evaluation pertaining to product liability or crashworthiness issues;

3. Issue litigation holds on all documents in any form pertaining to research projects that involve issues related to product liability or crashworthiness issues;

4.  Issue litigation holds on all documents that are presently or will be subject to any type of document retention policy;

5.  Issue litigation holds on all documentation and all communications sent to outside Counsel, outside experts, or outside contractors.

The Court sets a hearing on this matter to show cause why this order should not be converted to a preliminary injunction, for October 7, 2009 at 1:30 p.m.

This order shall expire on October 7, 2009 unless extended by the Court for good cause shown.

The Court has considered the issue of bond and is persuaded that no bond should be required at this time.

SIGNED this 30th day of September, 2009.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAUL LOPEZ AND DIANA LOPEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.L., A MINOR, | § § § § | |
| Plaintiff | § § § | |
| vs. | § § | CIVIL ACTION NO. 2:09-CV-292 |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD MARTIN, ERIC TAIRA, DIAN OGILVIE, | § § § § § § § | |
| Defendants. | § § | |

**ORDER**

It is hereby ORDERED that:

Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor Corporation ("TMC") shall continue to maintain and preserve documents pursuant to their current Notices to Preserve Documents issued as a result of the plaintiffs' complaint filed in this action, plaintiffs' complaint filed in *Cole, et al. v. Toyota Motor Corporation, et al.*; C.A. 2:09-cv-268; in the U.S. District Court, Eastern District of Texas, ("Cole Litigation") and in connection with the ongoing litigation by and between Dimitrios Biller and TMS and/or TMC ("Biller Litigation") and shall advise Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor North America, Inc. to comply with their respective Notice(s) to Preserve in this case, the Cole Litigation and the Biller Litigation.

DB1/63763125 1

**EXHIBIT "C"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| RAUL LOPEZ AND DIANA LOPEZ, INDIVIDUALLY AND AS NEXT FRIEND OF A.L., A MINOR,<br><br>**Plaintiff**<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD MARTIN, ERIC TAIRA, DIAN OGILVIE,<br><br>**Defendants.** | § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 2:09-CV-292** |

### ORDER

On October 1, 2009, Dimitrios Biller, a former in-house attorney employed by defendant, Toyota Motor Sales, U.S.A., Inc. ("TMS"), hand-delivered four (4) boxes of documents "Documents" to the clerk of this Court along with a separate letter generally describing the contents of the four boxes. This letter has been sealed by the Court but provided to the parties.

On October 7, 2009, the Court held a telephone hearing for the purpose of addressing the disposition of the Documents with counsel for plaintiffs and counsel for TMS participating. Plaintiffs and TMS announced that they had conferred among themselves in advance of the hearing and had reached an agreement, subject to Court approval, regarding the disposition of the Documents, including the creation of a privilege log and the Court's determination of the applicability of any objections to production of the documents. After hearing the proposed agreement, the Court ORDERS the following in connection with this action:

DB2/21369780.3

1. On or before October 14, 2009, IKON Document Solutions, Inc. ("IKON") shall take possession of the Documents that were tendered to the Court on October 1, 2009. IKON shall Bates stamp the original Documents. The Bates stamp will contain the designation "Lopez v. Toyota Motor Corporation, et al.", a designation of which box the document was located (i.e. 1 of 4) and a corresponding numerical Bates number containing the prefix "Doc.". Each Bates number and other document designation will be in the lower right corner of each document.

2. IKON shall make one copy of the Bates numbered original Documents. IKON is advised that a 40 page memorandum summary supposedly prepared by Biller or one of Mr. Biller's attorneys is believed to be contained in one of the 4 boxes of Documents. This memorandum summary shall not be copied or imaged by IKON and shall not be allowed to be reviewed by anyone at this time. However, this summary memorandum shall be Bates numbered with the original documents. This memorandum summary shall be placed in a sealed package by IKON and marked "Biller Memorandum". The original of this summary memorandum shall be returned with the original Documents to be held by the Court until such time as the matter regarding the privileged nature of the Documents (including the Biller Memorandum) is determined by the Court or otherwise agreed to by the parties. If IKON cannot locate the summary memorandum by October 19, 2009, counsel for the parties shall be immediately advised.

3. Once IKON has Bates stamped the original Documents, IKON shall make a copy of the Bates numbered original Documents and create a watermarked image version of the Documents using the watermark provided by plaintiffs. The watermark shall not obscure the text of the images or make the images otherwise more difficult to read. The imaged Documents shall be "read only" and made available for TMS' review in a secure database on or before October

20, 2009. Should IKON not meet this deadline, the deadline for the privilege document log referenced in paragraph 6 below shall be extended for each day the database and passwords are unavailable. The original Documents shall be secured by IKON with tape in their original respective boxes and returned to the Court. The Documents will remain in the Court's possession until further ordered.

4. Only in-house counsel for TMS and counsel of record for TMS may review the Documents in the secure database. A log of individuals who have access to reviewing the Documents on the secure database shall be maintained by IKON and shall be turned over to the Court upon written request. IKON shall identify individuals who have access to the secure database by issuing unique log-ins and passwords.

5. In-house counsel for TMS and counsel of record for TMS shall also have permission to physically inspect the copies of the Documents subject to the following: (1) an IKON representative shall accompany and stay with the Documents at all times during the physical inspection; (2) IKON shall maintain a log of the individuals who physically inspect the Documents, and this log shall be turned over to the Court upon written request; and (3) no copier, camera, pda or recording device of any kind shall be permitted during the physical inspection. The cost of IKON's services shall be paid by TMS.

6. TMS shall serve the Court and counsel for plaintiffs with a privilege document log pursuant to Fed.R.Civ.P. 26(b)(5), pertaining to the Documents on or before December 11, 2009.

7 The following motions filed by the Plaintiffs are withdrawn: Plaintiffs' Motion for Expedited/Emergency Relief Regarding Filed Motions (Docket No. 11); Plaintiffs' Motion to Examine Dimitrios Biller in Court Before the Scheduling Conference Hearing (Docket No. 12); Plaintiffs' Motion to Inspect 4 Boxes of Documents Tendered by Dimitrios Biller to the Court

(Docket No. 13), and Plaintiffs' Motion for Protective Order as to the Four Boxes Tendered by Dimitrios Biller to the Court (Docket No. 15) .

8. Any Documents that are not subject to any objection raised by TMS as to their production or disclosure and that are otherwise relevant to the matters raised by Plaintiffs in their complaint, will be produced to counsel for the Plaintiffs subject to an Agreed Protective Order to be submitted by the parties. This Order or the final determination of any privilege assertion shall not change TMS' right to challenge the relevance and therefore discoverability of any document deemed to be non-privileged.

9. If the Court desires testimony of Dimitrios Biller concerning issues in this matter, Mr. Biller will be ordered to appear for testimony. TMS does not waive any objections relating to Mr. Biller's testimony.

**EXHIBIT "D"**

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

**In re** TMS Litigation                                                    MDL Docket No.___

**BRIEF IN SUPPORT OF MOTION OF TOYOTA MOTOR CORPORATION, TOYOTA
MOTOR SALES, U.S.A., INC., CHRISTOPHER REYNOLDS, JANE HOWARD
MARTIN, ERIC TAIRA, DIAN OLGIVIE, AND ALICIA MCANDREWS
FOR TRANSFER OF ACTIONS TO THE CENTRAL DISTRICT OF CALIFORNIA
PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS**

   Movants Toyota Motor Corporation ("TMC"), Toyota Motor Sales, U.S.A., Inc.

("TMS"), Christopher Reynolds, Jane Howard Martin, Eric Taira, Dian Olgivie, and Alicia

McAndrews respectfully submit this brief in support of their Motion to centralize the four cases

set forth in the Schedule of Actions attached hereto as Exhibit A for coordination for pretrial

purposes in the U.S. District Court for the Central District of California before the Honorable

George H. King.

   This Motion encompasses four cases.[2]  The defendants in each case are TMC,

TMS, Christopher Reynolds, Jane Howard Martin, Eric Taira, and Dian Olgivie; Alicia

---

[2] The cases are:  *Biller et al. v. Toyota Motor Corp. et al.*, No. CV-09-5429 (GHK) (C.D. Cal.)
("*Biller/TMS*" or "first-filed action") (*see* Exhibit B); *Basco et al. v. Toyota Motor Corp. et al.*,
No. CV-09-06307 (GHK) (C.D. Cal.) ("*Basco*" or "second-filed action") (*see* Exhibit D); *Cole et
al. v. Toyota Motor Corp. et al.*, No. 2:09-CV-00268 (TJW) (E.D. Tex.) ("*Cole*" or "third-filed
action") (*see* Exhibit E); and *Lopez et al. v. Toyota Motor Corp. et al.*, No. 2-09CV-292 (TJW)
(E.D. Tex.) ("*Lopez*" or "fourth-filed action") (*see* Exhibit F).

McAndrews is an additional defendant in the two cases pending in the Central District of California. Each case is based on allegations of discovery misconduct made by a former TMS in-house attorney named Dimitrios Biller in the first-filed action, which Mr. Biller filed in the Central District of California and is pending before Judge King ("*Biller/TMS*"). Defendants deny Mr. Biller's allegations. Each case – *Biller/TMS* and the three follow-on cases it has spawned – puts at issue information that TMS believes to be protected by its attorney-client privilege, the work-product doctrine, and confidential business information regarding Toyota vehicles. Each case will feature attempts by Mr. Biller, and other plaintiffs incorporating his allegations, to pierce TMS's privileges. The witnesses and evidence potentially relevant to each case are overwhelmingly located in the Los Angeles area, where TMS is headquartered and Mr. Biller and the individual defendants live. The second-filed action – *i.e.*, the first follow-on action – is likewise pending before Judge King, and is a putative nationwide class action ("*Basco*"). An additional related case brought by Mr. Biller against other defendants, in which TMS's attorney-client privilege is similarly implicated, is pending before Judge King. *Biller v. Los Angeles County et al.*, No. CV09-03079 (GHK) (C.D. Cal.) ("*Biller/LAC*"). And a related case brought by TMS against Mr. Biller is pending in Los Angeles Superior Court. *Toyota Motor Sales, U.S.A., Inc. v. Biller et al.*, No. SC100501 (Cal. Super. Ct. Los Angeles County). The center of gravity of all the litigation relating to Mr. Biller's allegations of discovery misconduct by TMS, therefore, is the Central District of California, which is also where the alleged misconduct occurred. The third- and fourth-filed actions, each explicitly based on and incorporating Mr. Biller's complaint in *Biller/TMS*, were filed by the same plaintiffs' counsel in the Eastern District of Texas and contain identical allegations and claims ("*Cole*" and "*Lopez*").

2

Given the common issues presented, centralization will advance the just and efficient conduct of the Actions by avoiding duplicative discovery and potentially inconsistent rulings. The need for consolidation is especially acute here because a central issue in all the subject Actions will be whether Mr. Biller may disclose TMS's attorney-client privileged information. Inconsistent rulings concerning that issue would not be merely unseemly or inefficient; rather, because the privilege is a privilege against disclosure, if the privilege is vitiated in one action, it cannot be protected or restored in other actions. Additionally, each of the Actions will involve confidential business information regarding Toyota vehicles that plaintiffs will likely attempt to obtain and disclose. Centralization is needed to ensure that these issues are handled with the sensitivity and care that attorney-client privileged and otherwise confidential information merits.

The Central District of California is the appropriate transferee District. The Central District is the logical transferee forum because it is where the events underlying Mr. Biller's allegations (and thus the other plaintiffs' allegations) occurred, where the suit that spawned the rest of the subject Actions is pending, where the underlying factual allegations will likely first be addressed, and where the first (and broadest) follow-on action is pending. Moreover, the Central District is the most convenient transferee forum because it is where TMS, Mr. Biller, and the individual defendants are located and where potentially relevant documents and witnesses are located. The Central District is also far more accessible than the Marshall Division of the Eastern District of Texas for any non-local witnesses, such as TMC employees from Japan. In addition, consolidation before Judge King in the Central District of California would permit coordination between the subject Actions and the related *Biller/LAC* suit pending

3

before Judge King as well as with the related suit by TMS against Mr. Biller pending in Los
Angeles Superior Court.

## BACKGROUND

Four actions have now been filed concerning TMS's alleged practices regarding
electronic discovery. All this litigation commenced on July 24, 2009, when Dimitrios Biller, a
former TMS in-house attorney, filed *Biller/TMS* in the Central District of California. The
complaint alleges that TMS and the other defendants intentionally withheld discoverable
electronic information in personal injury suits while Mr. Biller was responsible for product
liability litigation at TMS. TMS disputes these allegations.

Mr. Biller's allegations were widely reported in the media. *See, e.g.,*
http://www.latimes.com/business/la-fi-toyota1-2009sep01,0,6399449.story. Within days after
the allegations in *Biller/TMS* became public, the first follow-on action (*Basco,* a putative class
action) was filed in the Central District of California by product liability claimants seeking to
reopen their settlements with TMS based on Mr. Biller's allegations. In the following weeks,
two similar actions were filed by the same counsel in the Eastern District of Texas (*Cole* and
*Lopez*). Among other things, plaintiffs in all three of these follow-on actions:

- Expressly incorporate the *Biller/TMS* Complaint and exhibits
  thereto. *See Lopez* Compl. ¶ 9; *Cole* Compl. ¶ 38; *Basco* Compl.
  ¶ 3.

- Allege conduct occurring in the Central District of California;

- Name all or almost all of the same individual defendants residing
  in the Central District of California; and

- Involve potential witnesses and documents located in the Central
  District of California.

A more complete description of the procedural status of each action is set forth below.

A.   *Biller et al. v. Toyota Motor Corp. et al.,*
     No. CV-09-5429 (GHK) (C.D. Cal.) (*see* Exhibit B)

In July 2009, Mr. Biller and his company, Litigation Discovery & Trial

Consulting, Inc., filed the *Biller/TMS* action in the Central District of California alleging that

TMS conspired with the other named defendants to withhold discoverable electronic information

from plaintiffs in personal injury suits while Mr. Biller was employed by TMS. *Biller/TMS* also

raises allegations regarding Mr. Biller's termination from employment at TMS. Mr. Biller lives

in the Los Angeles area, and his company is located there as well. All the defendants are also

California residents, except for TMC, which is the Japanese parent company of TMS.

*Biller/TMS* was assigned to the Honorable George H. King, because Judge King

was already presiding over *Biller/LAC*, which is scheduled to go to trial in December 2009.

*Biller/LAC* alleges that, after Mr. Biller's employment with TMS, the Los Angeles County

District Attorney's Office wrongfully terminated his employment after only three months. Mr.

Biller's claims against the *Biller/LAC* defendants depend on Mr. Biller's allegations against

TMS, because Mr. Biller's theory is that TMS's supposed misconduct while he was employed

there caused him to suffer disabilities and that the District Attorney's Office then failed to

accommodate those disabilities. In advancing allegations about his employment at TMS, Mr.

Biller has sought to subpoena TMS witnesses and use TMS's confidential attorney-client

information, prompting TMS to seek to intervene in June 2009 (before Mr. Biller filed

*Biller/TMS*). Although TMS's application to intervene in *Biller/LAC* was denied, the Court

specifically contemplated that TMS could appear if necessary to protect its privileged

information. *See Biller/LAC* Order dated June 22, 2009 (denial of TMS's motion was "without

prejudice to appear before [the Magistrate Judge] during the discovery process to assert its

interest in maintaining the non-disclosure of its information") (attached as Exhibit C). Mr. Biller

now alleges in *Biller/TMS* that TMS's efforts in *Biller/LAC* to protect its attorney-client communications were wrongful and support a RICO claim. Although TMS does not seek to consolidate *Biller/LAC* into the MDL, TMS has a strong interest in having both cases remain before Judge King for necessary coordination. In addition, Judge King's experience with *Biller/LAC* has and will make him uniquely familiar with the facts surrounding Mr. Biller's employment at TMS. Judge King therefore is ideally situated to coordinate the subject Actions.

After Mr. Biller filed *Biller/TMS*, TMS moved to have the complaint sealed. Judge King denied the motion on the ground that Mr. Biller's allegations had already been made available to the media, but Judge King specified that his Order "does not prevent Defendants from later raising the attorney-client privilege, should Plaintiffs seek to discover or introduce into evidence any communications or information protected by the attorney-client privilege." *Biller/TMS* Order dated Sept. 15, 2009 (attached as Exhibit G). Issues involving the attorney-client privilege and confidential TMS vehicle-related information are likely to arise as the *Biller/TMS* litigation proceeds.

Similar privilege issues have arisen in an additional related action between Mr. Biller and TMS that is pending in Los Angeles Superior Court near Judge King's courthouse. *See Toyota Motor Sales, U.S.A., Inc. v. Biller et al.*, No. SC100501 (Cal. Super. Ct. Los Angeles County). TMS brought this state court action to enforce its Severance Agreement with Mr. Biller and to protect against the unauthorized disclosure of its privileged information. The Superior Court entered a preliminary injunction prohibiting Mr. Biller from disclosing "confidential attorney-client communications" with TMS and "privileged or work product documents . . . regarding the business affairs of Toyota" and referred him to the California Bar for consideration of possible discipline. Superior Court Order re: Preliminary Injunction dated

Oct. 9, 2009 (attached as Exhibit I); *see also* Superior Court Order re: Referral to State Bar and Preliminary Injunction dated Sept. 25, 2009 (attached as Exhibit H).  In accordance with the Severance Agreement, TMS is seeking to compel arbitration in this state court action (and TMS may do so in *Biller/TMS* as well).

B.    *Basco et al. v. Toyota Motor Corp. et al.,*
       No. CV-09-06307 (GHK) (C.D. Cal.) (*see* Exhibit D)

Shortly after the *Biller/TMS* action became public, plaintiffs Bella Basco and Crystal Ennis filed *Basco*, claiming that TMS violated RICO by intentionally withholding discoverable information from them in their previously resolved personal injury actions against TMS.  *Basco* expressly incorporates the allegations of *Biller/TMS* and, in fact, attaches the *Biller/TMS* complaint as an exhibit.  The only basis that the *Basco* plaintiffs suggest for reopening their product liability cases against TMS is Mr. Biller's claim that TMS concealed discoverable information.  Basco and Ennis seek to represent two putative classes of plaintiffs:  a "National Class," which consists of all persons in the United States "who were plaintiffs in product liability actions against the Toyota Defendants, where the Toyota Defendants withheld relevant data, documents, and/or testimony, and whose cases were settled or lost at trial," *Basco* Compl. ¶¶ 44-45, and a "California Class" of all California persons who were plaintiffs in such actions.  *Id.* at ¶¶ 42-43.  Because *Basco* was deemed related to *Biller/TMS*, it was assigned to Judge King.  The defendants have not yet responded to the complaint.

C.    *Cole et al. v. Toyota Motor Corp. et al.,*
       No. 2:09-CV-00268 (TJW) (E.D. Tex.) (*see* Exhibit E)

Two and a half weeks after *Basco* was filed, *Cole* was filed in the Eastern District of Texas, Marshall Division, on behalf of plaintiffs from Canada, Jamaica, and various locations throughout Texas who had previously resolved approximately 16 separate product liability

claims with TMS.  As in *Basco*, the *Cole* plaintiffs explicitly base their attempt to reopen their

resolved lawsuits on Mr. Biller's allegations in *Biller/TMS*.  *Cole* Compl. ¶¶ 38-55 (stating that

complaint was filed based on the "recently uncovered facts" in *Biller/TMS*).  As in *Basco*, *Cole*

incorporates and attaches the *Biller/TMS* complaint, claiming that the defendants violated RICO

for the reasons set forth in *Biller/TMS*.  And as in *Biller/TMS* and *Basco*, these allegations focus

on conduct allegedly occurring in the Central District of California.  Based on their complaint,

the *Cole* plaintiffs appear to fall within the proposed nationwide class in *Basco*.  The defendants

have not yet responded to the complaint.

      D.     *Lopez et al. v. Toyota Motor Corp. et al.*, No. 2-09CV-292 (TJW) (E.D. Tex.)
            ("*Lopez*" or "fourth-filed action") (*see* Exhibit F)

      On September 25, 2009, counsel for the *Cole* plaintiffs filed another action in the

Eastern District of Texas, Marshall Division.  Although filed separately from *Cole*, the *Lopez*

action reproduces *verbatim* the allegations and claims in *Cole* and expressly incorporates the

same *Biller/TMS* allegations.  Indeed, with the exception of the "Parties" section, the *Lopez* and

*Cole* complaints are identical down to the precise wording of each cause of action.  *See Lopez*

Compl. ¶¶ 58-61 ("Sixth Cause of Action Violation of the Golden Rule"); *Cole* Compl. ¶¶ 87-90

("Sixth Cause of Action Violation of the Golden Rule").  The defendants have not yet responded

to the complaint.[3]

## ARGUMENT

      This Panel considers two issues in adjudicating transfer motions under 28 U.S.C.

§ 1407.  First, the Panel addresses whether the actions involve common questions of fact such

---

[3]  Plaintiffs obtained the entry of an *ex parte* temporary restraining order in *Lopez* on September 30, 2009.  In a telephone status conference with the Court on October 7, 2009, the parties agreed to certain measures that TMS has undertaken to preserve potentially relevant documents, and the TRO is no longer in force.  *See Lopez* Order dated Oct. 14, 2009 (attached as Exhibit J).

that centralization would promote the just, efficient, and convenient conduct of the actions. Second, the Panel determines which federal District and Judge are best situated to take on the transferred actions. *See* John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 TULANE L. REV. 2225, 2228 (2008). Under the governing criteria, the subject Actions should be consolidated in the Central District of California before Judge King.

## I.     THE ACTIONS INVOLVE COMMON QUESTIONS OF FACT SUCH THAT CENTRALIZATION WOULD PROMOTE THEIR JUST, EFFICIENT, AND CONVENIENT CONDUCT

The statute sets forth three requirements for transfer. The transfer must: (i) involve actions having one or more common questions of fact; (ii) promote the "just and efficient conduct" of the actions; and (iii) further "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). All three criteria weigh heavily in favor of centralizing these actions for all pretrial purposes.

### A.     The Actions Involve Common Questions Of Fact

The threshold requirement is that the Actions must involve at least one "common question[] of fact." *Id.* § 1407(a)(i). "The greater the factual commonality of the cases, the more likely it is that centralization will benefit the involved parties and the system as a whole." Heyburn, 82 TULANE L. REV. at 2237. That threshold requirement is amply satisfied here. Factual commonalities are particularly prominent where, as here, each case involves the same defendants. *In re: Air West, Inc., Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) (consolidation favored "where two or more complaints assert comparable allegations against identical defendants based on similar transactions and events").

Moreover, each case makes common claims of misconduct against those defendants, and those claims are entirely derivative of Mr. Biller's allegations in *Biller/TMS*. By

the plaintiffs' own representations, the events alleged in *Biller/TMS* form the entire basis of the second-, third-, and fourth-filed Actions; the follow-on Actions would not have been filed but for *Biller/TMS*. The *Basco*, *Cole*, and *Lopez* complaints expressly incorporate the *Biller/TMS* complaint in its entirety. Indeed, the *Cole* and *Lopez* complaints directly attribute their existence to media coverage of Mr. Biller's allegations in *Biller/TMS*, stating that the "discovery abuse that is complained of was just learned in August 2009, following an article in the Los Angeles Times" about *Biller/TMS*. *See Lopez* Compl. ¶ 31; *Cole* Compl. ¶ 66. Both complaints also contain "Recently Uncovered Facts" sections devoted to summarizing Mr. Biller's allegations. *See Lopez* Compl. ¶¶ 9-26; *Cole* Compl. ¶¶ 38-55. If Mr. Biller does not succeed in substantiating his allegations in *Biller/TMS*, the professed basis for the follow-on actions would wholly disappear, as there would be no more claimed justification for reopening the plaintiffs' resolved claims.

Based on those same factual allegations, each case also advances the same civil RICO claim against TMS as first asserted in *Biller/TMS*. The four actions not only share underlying questions of fact – the key criterion for transfer – but also share legal theories. This Panel has explained that "the applicability of different legal principles will not prevent the transfer of an action under section 1407 if the requisite common questions of fact exist." *In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970); *see also In re Salomon Bros. Treasury Sec. Litig.*, 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (transferring action with common factual issues despite recognizing that "[l]egal theories . . . vary among the actions, with some actions raising claims not common to all actions"). Where the actions involve overlapping legal theories as well as identical factual allegations, it is even clearer that transfer is appropriate. *Cf. In re Fed. Nat'l Mortgage Ass'n*

10

*Sec., Derivative & "ERISA" Litig.*, 370 F. Supp. 2d 1359, 1361 (J.P.M.L. 2005) (type of claim is immaterial so long as it "can be expected to focus on a significant number of common events, defendants, and/or witnesses"). Indeed, centralization of these factually-identical Actions will benefit the plaintiffs as well as TMS and the other defendants (and, of course, the judicial system). *See, e.g.*, *In re Stirling Homex Corp. Sec. Litig.*, 405 F. Supp. 314, 316 (J.P.M.L. 1975) ("Section 1407 treatment will allow [plaintiffs] to experience a net savings of time, effort and expenses through pooling their resources with other plaintiffs in the transferee district who share similar interests.").

**B.   Centralization Will Promote The Just And Efficient Conduct Of The Actions In Light Of The Key Role of Mr. Biller's Allegations in Each Action and the Sensitive Attorney-Client Privilege Issues at Stake**

Given the common issues of fact underlying all four Actions, transfer pursuant to § 1407 is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 223 F. Supp. 2d 1388, 1389 (J.P.M.L. 2002).

The Panel routinely transfers actions to avoid subjecting defendants to overlapping discovery in similar actions pending in multiple forums. *See In re Am. Home Mortgage Sec. Litig.*, 528 F. Supp. 2d 1376, 1377 (J.P.M.L. 2007); *see also In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1135-36 (Fed. Cir. 1992) (upholding transfer decision based in part on need for depositions common to all actions). Because the second-, third-, and fourth-filed actions are expressly predicated on *Biller/TMS* and incorporate Mr. Biller's factual allegations from that initial complaint, all four Actions will present substantially similar discovery issues. Indeed, the complaints in the follow-on Actions are entirely derivative of Mr. Biller's allegations from *Biller/TMS*. Thus, plaintiffs will likely seek documents from, and depositions of, the same

11

witnesses with knowledge of the events and actions surrounding TMS's alleged withholding of

electronic information in the product liability cases. Centralization before a single judge will

thus minimize duplicative discovery requests and enable coordination of discovery disputes and

obligations.

Absent transfer, the different district courts are likely to issue inconsistent pre-

trial rulings. *See, e.g., In re Am. Home Mortgage Sec. Litig.*, 528 F. Supp. 2d at 1377; *In re*

*Merrill Lynch*, 223 F. Supp. 2d at 1389 (centralization necessary in part to prevent inconsistent

pretrial rulings). Coordinating the Actions before a single court would avoid the issuance of

contradictory rulings on identical motions challenging the complaints or seeking summary

judgment. *See, e.g., In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L.

1976) ("the likelihood of motions for partial dismissal and summary judgment in all three actions

grounded at least in part on [a common issue] makes Section 1407 treatment additionally

necessary to prevent conflicting pretrial rulings and conserve judicial effort").

Avoiding duplication of effort and inconsistent rulings justifies centralization

even in ordinary situations. But the special prominence of sensitive attorney-client privilege

issues here makes it especially vital to avoid inconsistent rulings. Because Mr. Biller was an

attorney for TMS and his allegations relate to TMS's alleged handling of litigation, TMS's

attorney-client privilege is at the core of the subject Actions. TMS believes that Mr. Biller's

allegations – and the follow-on plaintiffs' claims incorporating Mr. Biller's allegations –

improperly seek to disclose information covered by TMS's attorney-client privilege with its

former attorney Mr. Biller (as well as information protected by the work-product doctrine and

confidential business information). TMS intends to protect its privileged information from

unauthorized disclosure. Mr. Biller and the follow-on plaintiffs evidently intend to argue that

TMS's privilege is vitiated by the crime-fraud exception. *See Biller/TMS* Compl. ¶ 68. For example, Mr. Biller has cast TMS's efforts in *Biller/LAC* to protect its privileged information as part of a purported RICO violation. *See Biller/TMS* Compl. ¶¶ 71-75.

By their nature, these privilege issues necessitate centralization. If one court rules against a privilege assertion and requires disclosure, it is cold comfort that all other courts uphold that privilege assertion; once the privileged information is disclosed, the harm is done. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 164 (2d Cir. 1992) ("attorney-client privilege prohibits disclosure to adversaries as well as the use of confidential communications" because mere disclosure undermines the privilege). TMS and the other defendants categorically deny that they engaged in any conduct that would trigger the crime-fraud exception. Rather than have multiple courts venture separate and potentially conflicting rulings on that question, the Panel should centralize these Actions so that one court can handle these issues with the care and consistency that the attorney-client privilege deserves.

Centralizing these Actions before Judge King would provide the added benefit of permitting Judge King to coordinate the Actions with the identical or related issues raised in *Biller/LAC. See Biller/LAC* Order dated June 22, 2009 (contemplating that TMS can appear in *Biller/LAC* to seek to protect its privileged information). Indeed, with *Biller/LAC* scheduled to go to trial in December 2009, Judge King will likely be the first to consider Mr. Biller's factual allegations against TMS. Because each of the follow-on Actions wholly rely on Mr. Biller's allegations, and would not have been filed but for those allegations, it would be highly inefficient if each district court were to issue subsequent rulings at odds with those of Judge King.

**C.    Transfer Will Serve The Convenience Of The Parties And Witnesses**

Centralizing these Actions will save all parties the needless burden and expense of simultaneously litigating similar (indeed, identical) issues in different Districts.  As already explained, the Actions do not merely involve common issues of fact – they all expressly are predicated on the same set of allegations, namely, Mr. Biller's in *Biller/TMS*.  It would serve no legitimate purpose to subject the parties or witnesses to duplicative proceedings in multiple forums.

**II.    THE ACTIONS SHOULD BE CENTRALIZED IN THE CENTRAL DISTRICT OF CALIFORNIA BEFORE JUDGE KING**

All relevant factors militate in favor of transfer to and centralization in the Central District of California before Judge King.  First, the Los Angeles area is the common geographical focal point of the actions, where the alleged misconduct supposedly occurred and where the vast majority of all potentially relevant documents and witnesses are located.  Second, Judge King's Court in the Central District is where the original action (*Biller/TMS*), the first and broadest follow-on action (*Basco*), and the related *Biller/LAC* action were filed and are pending.  Third, the Central District of California is far better positioned than the Eastern District of Texas to coordinate with the related state court action between TMS and Mr. Biller in Los Angeles Superior Court.  Finally, accessibility considerations weigh heavily in favor of the Central District of California over the Eastern District of Texas, where the only other related actions are pending.

**A.    The Actions Share A Singular Geographical Focal Point in California**

Mr. Biller alleges in *Biller/TMS* that "a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in [the Central District of California]." *Biller/TMS* Compl. ¶ 13.  Although TMS denies Mr. Biller's allegations, it is clear that whatever

14

happened during Mr. Biller's employment with TMS occurred in substantial part in the Central

District of California, as that is where Mr. Biller worked when employed by TMS. Most, if not

all, of the potentially relevant documents and witnesses will be in the Los Angeles area where

TMS is headquartered and most of its employees live. To the extent that relevant documents and

witnesses are located at TMC headquarters in Japan, Los Angeles would be far more convenient

than Marshall, Texas. The Central District of California is also where Mr. Biller and the

individual defendants live. *See In re Am. Home Mortgage Sec. Litig.*, 528 F. Supp. 2d 1376,

1377-78 (J.P.M.L. 2007) (transferring to District where corporate defendant was

"headquarter[ed]" since "relevant documents and witnesses may be found there"); *In re SFBC*

*Int'l, Inc. Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (same).[4]

Accordingly, California has the greatest interest in overseeing and regulating the conduct of both

TMC and Mr. Biller. *Cf.* Superior Court Order re: Preliminary Injunction dated Oct. 9, 2009;

Superior Court Order re: Referral to State Bar and Preliminary Injunction dated Sept. 25, 2009

(referring Mr. Biller to state bar for possible discipline).

### B.    The First-Filed and Second-Filed Actions, As Well As The Related *Biller/LAC* Action, Are Already Before Judge King

Both the first-filed action, *Biller/TMS*, and the second-filed action, *Basco*, are

pending in the Central District of California and assigned to Judge King. *See In re Veeco*

*Instruments Inc. Sec. Litig.*, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (transferring actions to

forum where the first-filed action was pending). Nor is it happenstance that the first-filed action

---

[4]   *See also, e.g., In re Marsh & McLennan Cos. Sec. Litig.*, 429 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) (stating that District in which defendants were headquartered was a "likely source of relevant documents and witnesses"); *In re Air Crash Disaster at Sioux City*, 128 F.R.D. 131, 132 (J.P.M.L. 1989) ("relevant documents can likely be found within this district at [defendant's] headquarters"); *In re LTV Corp. Sec. Litig.*, 470 F. Supp. 859, 862 (J.P.M.L. 1979) (transferring to District where defendant was headquartered and files, officers, directors, and employees were located).

is pending in the Central District of California; rather, that is where Mr. Biller lives and worked for TMS and where TMS is located, and it thus was entirely logical for *Biller/TMS* to be filed in that District. Likewise, it was not happenstance that *Biller/TMS* was assigned to Judge King; it was reassigned within the District to Judge King because Judge King already was presiding over the related *Biller/LAC* case.

That the third- and fourth-filed Actions were filed in Texas does not diminish the underlying connections to the Central District of California. Rather, the nature of the relationship among the Actions additionally compels transferring the third- and fourth-filed actions from the Eastern District of Texas to the Central District of California. *Cole* and *Lopez* are follow-on actions explicitly and directly predicated on *Biller/TMS*. Where an original action spawns multidistrict litigation, it is appropriate to transfer the subsequently filed cases to the District where the original action is pending. *See, e.g., In re: Celexa and Lexapro Marketing & Sales Practices Litig.*, MDL No. 2067 (J.P.M.L. Aug. 19, 2009) (ordering transfer to D. Mass. because *qui tam* actions that spawned the subsequent actions were pending in that District, even though none of the actions being centralized was pending in that District and none of the parties before the Panel sought transfer to that District).

Moreover, the second-filed action in the Central District of California, *Basco*, is a putative class action that also carries implications for *Cole* and *Lopez*. The "National Class" in *Basco* encompasses all persons in the United States who were plaintiffs in "product liability actions against the Toyota Defendants, where the Toyota Defendants withheld relevant data, documents, and/or testimony, and whose cases were settled or lost at trial." *Basco* Compl. ¶ 45. The plaintiffs in *Cole* and *Lopez* appear to fall within this broad putative class definition. *Basco*

not only was filed earlier than *Cole* and *Lopez*, but it also is broad enough to subsume those subsequent actions.[5]

In addition to presiding over the original action and the first and broadest follow-on action, Judge King is also presiding over *Biller/LAC*. TMS has a substantial interest in monitoring proceedings in *Biller/LAC* because, in that case, Mr. Biller's attempts to introduce privileged communications and other confidential business information from his employment at TMS are central to his theory that the District Attorney's Office failed to accommodate disabilities he incurred in the course of his employment at TMS. Centralizing the subject Actions before Judge King would allow Judge King to coordinate not only among the subject Actions, but also between them and *Biller/LAC*. And with *Biller/LAC* scheduled to go to trial in December 2009, Judge King is especially well-positioned to handle the subject Actions with efficiency and consistency.

Finally, Judge King is an experienced jurist who is not currently assigned any multidistrict litigation. *See* Heyburn, 82 TULANE L. REV. at 2241 ("Ultimately, the Panel's goal is to pair an experienced, knowledgeable, motivated, and available judge in a convenient location with a particular group of cases.").

C.      **Transfer to the Central District of California Best Facilitates Coordination With Related State Court Proceedings**

---

[5] Nor should the Panel be swayed by the fact that two separate actions are pending in the Eastern District of Texas. Although the plaintiffs' counsel filed *Lopez* separately rather than adding the Lopezes to the list of plaintiffs in *Cole*, the complaints contain identical factual allegations (expressly incorporating Mr. Biller's allegations) and identical legal theories (including the novel "legal" claim that the defendants violated "the Golden Rule"). *See Lopez* Compl. ¶¶ 58-61; *Cole* Compl. ¶¶ 87-90. In any event, the far stronger qualitative connections to, and advantages of, the Central District of California would require transfer to that District even if there were numerically more actions pending in the Eastern District of Texas.

17

The Panel has deemed the "possibility of coordination with related state court proceedings" to be an important criterion in selecting a transferee District. *Id.* at 2240. Judge King's Court is located very close to the Los Angeles Superior Court, where TMS's action against Mr. Biller is pending and where similar attorney-client privilege issues have already arisen. *See supra* at 6-7. The potential for necessary or helpful coordination between the federal and state proceedings further supports transfer to the Central District of California. *See In re Gen. Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006) (selecting transferee District, in part, because of related state court proceedings).

D.      **The Central District of California Is The Most Accessible Forum**

Finally, the Central District of California is far more accessible than the only other court in which a subject action is pending, namely, the Eastern District of Texas in Marshall, Texas. *See In re Fed. Home Loan Mortgage Corp. Sec. & Derivative Litig. (No. II)*, 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004) (transferring litigation to a "readily accessible" district). Getting to and from Marshall, Texas, for nearly all witnesses, defendants, and defense counsel would be far more burdensome. Indeed, Marshall would not be inconvenient only for the defendants. Mr. Biller lives in the Los Angeles area, as do his attorneys.[6] One of the two named *Basco* plaintiffs and the *Basco* attorneys reside in California; the other plaintiff resides in Canada, not Texas. And the plaintiffs in *Lopez*, as well as the vast majority of the plaintiffs in

---

[6] Mr. Biller's uninvited hand-delivery of four boxes of apparently misappropriated TMS documents to the *Lopez* Court on October 1, 2009 does not alter the analysis. Whatever the reason behind Mr. Biller's effort to move some potentially relevant documents from California (where he lives) to Marshall, Texas, it remains true that the vast majority of potentially relevant documents and witnesses are located in the Central District of California. TMS is in the process of accessing these four boxes, which TMS believes are very likely to contain its proprietary and privileged documents, pursuant to an agreement between the parties in *Lopez*. Neither the *Lopez* Court nor the plaintiffs or their counsel have seen these documents. *See Lopez* Order dated Oct. 14, 2009.

18

*Cole*, do not live in or near Marshall, Texas. *See In re Jamster Mktg. Litig.*, 427 F. Supp.2d

1366, 1368 (J.P.M.L. 2006) (choosing an accessible metropolitan forum as a transfer location).

**CONCLUSION**

For all the foregoing reasons, TMC, TMS, Christopher Reynolds, Jane Howard

Martin, Eric Taira, Dian Olgivie, and Alicia McAndrews respectfully request the Panel to grant

the Motion for Transfer and issue an Order centralizing or consolidating the actions set forth on

Schedule A in the Central District of California for pretrial proceedings before the Honorable

George H. King.

Dated:     October 16, 2009

Respectfully submitted,

By: _____

David L. Schrader
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Suite 2200
Los Angeles, CA 90291
213.612.2500 (phone)
213.612.2501 (fax)

Grace M. Rodriguez
Jeffrey S. Bucholtz
Jameson B. Carroll
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4706
202.737.0500 (phone)
202.626.3737 (fax)

Attorneys for Defendants
TOYOTA MOTOR CORPORATION, TOYOTA
MOTOR SALES, U.S.A., INC., CHRISTOPHER
REYNOLDS, JANE HOWARD MARTIN, ERIC
TAIRA, DIAN OGILVIE, ALICIA McANDREWS

**EXHIBIT "E"**

1             SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT WE O            HON. JOHN L. SEGAL, JUDGE

4

5   TOYOTA MOTOR SALES U.S.A., ET AL, )
                            )

6               PLAINTIFFS,  )
                            )

7      VS.                )  NO. SC 100501
                            )

8   DIMITRIOS P. BILLER, ET AL.,   )
                            )

9              DEFENDANTS.  )
         _____)

10

11          REPORTER'S TRANSCRIPT OF PROCEEDINGS

12           FRIDAY, SEPTEMBER 25, 2009

13

14   APPEARANCES:

15   FOR PLAINTIFFS:        LITTLER, MENDELSON, P.C.
                      BY:  FERMIN H. LLAGUNO, ESQ.

16                          ALAN B. CARLSON, ESQ.
                          DAVID S. MAOZ, ESQ.

17                    2050 MAIN STREET
                    SUITE 900

18                    IRVINE, CALIFORNIA 92614

19

20   FOR DEFENDANTS:        ALLEN & WOHRLE, LLP
                      BY:  JEFFREY ALLEN, ESQ.

21                            JOSEPH WOHRLE, ESQ.
                    2800 28TH STREET

22                    SUITE 321
                    SANTA MONICA, CALIFORNIA 90405

23

24

25

26

27

28   **ORIGINAL**     ADRIANNE THOMPSON, RPR, CSR #12370
                   OFFICIAL REPORTER

```
 1   CASE NUMBER:                    SC 100501

 2   CASE NAME:                      TOYOTA MOTOR SALES, USA,
                                     INC., VS. DIMITRIOS P.
 3                                   BILLER

 4   SANTA MONICA, CALIFORNIA        FRIDAY, SEPTEMBER 25, 2009

 5   DEPARTMENT WE O                 HON. JOHN L. SEGAL, JUDGE

 6   REPORTER:                       ADRIANNE THOMPSON, CSR NO.
                                     12370
 7

 8   TIME:                           9:03 A.M.

 9   APPEARANCES:

10              FERMIN H. LLAGUNO, ESQ., ALAN B. CARLSON, ESQ.,

11   DAVID S. MAOZ, ESQ., FOR TOYOTA MOTOR SALES; AND JEFFREY

12   ALLEN, ESQ., AND JOSEPH WOHRLE, ESQ., ON BEHALF OF DEFENDANT.

13

14        THE COURT:  START WITH NUMBER THREE, TOYOTA MOTOR

15   SALES, USA VS. BILLER, SC 100501.

16        MR. LLAGUNO:  GOOD MORNING, YOUR HONOR.  FERMIN

17   LLAGUNO, ALAN CARLSON, AND DAVID MAOZ WITH LITTLER MENDELSON

18   ON BEHALF OF THE PLAINTIFF TOYOTA MOTOR SALES.

19        MR. ALLEN:  GOOD MORNING, YOUR HONOR.  JEFFREY ALLEN

20   AND JOSEPH WOHRLE OF ALLEN & WOHRLE, SPECIALLY APPEARING ON

21   BEHALF OF THE DEFENDANT.

22        MR. WOHRLE:  GOOD MORNING, YOUR HONOR.

23        THE COURT:  HAVE YOU SUBSTITUTED IN TO THE CASE?

24        MR. ALLEN:  WE'RE IN THE PROCESS OF DOING THAT.

25        THE COURT:  ARE YOU GOING TO SUBSTITUTE IN?

26        MR. ALLEN:  I BELIEVE WE ARE.  WE'RE WORKING OUT THE

27   DETAILS.

28        THE COURT:  I'M SORRY?
```

1    MR. ALLEN:  I BELIEVE WE ARE.  WE'RE WORKING OUT THE

2    DETAILS.

3         THE COURT:  SHOULD I ALLOW YOU TO BE HEARD TODAY, OR

4    SHOULD YOU HAVE A SEAT IN THE AUDIENCE BECAUSE YOU'RE NOT

5    ATTORNEYS OF RECORD?

6         MR. ALLEN:  SPECIALLY APPEARING, YOUR HONOR.

7         THE COURT:  THERE'S REALLY NO SUCH THING UNLESS YOU'RE

8    CHALLENGING PERSONAL JURISDICTION.

9         MR. ALLEN:  SPECIALLY APPEARING AS COUNSEL, NOT MAKING

10    A SPECIAL APPEARANCE ON BEHALF OF THE DEFENDANT.

11         THE COURT:  STILL NO SUCH THING.  ARE YOU GUYS COMING

12    INTO THE CASE OR NOT?

13         MR. ALLEN:  WE WILL BE COMING INTO THE CASE, YOUR

14    HONOR.

15         THE COURT:  FAIR ENOUGH.  AND I'LL DISCLOSE FOR THE

16    RECORD THAT I KNOW MR. ALLEN FROM YEARS AGO.

17              HOW LONG HAS IT BEEN?  TEN YEARS AGO?

18         MR. ALLEN:  NOT QUITE THAT LONG.  SEVEN OR EIGHT.

19         THE COURT:  WE WERE ASSOCIATED IN THE PRACTICE OF

20    LAW -- FOR ABOUT A YEAR, MAYBE?

21         MR. ALLEN:  CORRECT.

22         THE COURT:  IT WON'T AFFECT MY ABILITY TO BE FAIR AND

23    IMPARTIAL.  I MAKE THAT DISCLOSURE FOR THE RECORD.

24              IT'S YOUR MOTION FOR PRELIMINARY INJUNCTION.

25    YOU MAY BE HEARD.

26         MR. LLAGUNO:  YES, YOUR HONOR.  I BELIEVE THE MATTER

27    HAS BEEN BRIEFED RATHER SIGNIFICANTLY, AND YOUR HONOR KNOWS

28    THIS CASE ABOUT AS WELL AS I WOULD EXPECT YOUR HONOR KNOWS ANY

1    CASE BEFORE THE COURT.  IF YOUR HONOR HAS ANY SPECIFIC

2    QUESTIONS FOR ME, I'M HAPPY TO ANSWER THEM.  OTHERWISE WE'LL

3    SUBMIT ON THE PAPERS, YOUR HONOR.

4            THE COURT:  MR. ALLEN.

5            MR. ALLEN:  THE ONE ISSUE -- WE'LL ALSO REST ON THE

6    PAPERS, BUT I HAVE TWO ISSUES I WANT TO RAISE:  THE FIRST IS

7    MORE A PROCEDURAL ISSUE AND THAT IS PURSUANT TO C.C.P. 527(F),

8    I BELIEVE THAT PLAINTIFFS WOULD BE REQUIRED TO SUBMIT

9    SUPPORTING PAPERS INITIALLY -- WHICH WE'VE GOT NONE AND I

10   DON'T BELIEVE ANY WERE FILED.  SO THE FIRST DOCUMENTS THAT

11   WERE FILED IN THIS INSTANCE WERE THE OPPOSITION PAPERS WHICH

12   MADE IT A LITTLE BIT DIFFICULT TO OPPOSE SOMETHING THAT WAS

13   UNCLEAR.

14           THE COURT:  NO, IT WAS AN ORDER TO SHOW CAUSE FROM A

15   LONG TIME AGO.  SO THAT WAS THEIR MOVING PAPERS.  AND I THINK

16   USUALLY ON A PRELIMINARY INJUNCTION THERE'S THE ORDER TO SHOW

17   CAUSE, THEN THE OPPOSITION, THEN THE REPLY.  I THINK THAT'S

18   WHAT HAPPENED.

19           MR. ALLEN:  WELL, WE'LL SUBMIT THAT ARGUMENT.  THE

20   OTHER IS --

21           THE COURT:  IT IS PRESERVED.

22           MR. ALLEN:  THANK YOU.  IN THIS INSTANCE THERE HAS -- A

23   BOND HAS NOT BEEN REQUESTED OR SUBMITTED, AND WE CONTEND THAT

24   A BOND IS REQUIRED IN THIS INSTANCE.

25           THE COURT:  YOU MAY BE HEARD ON THE BOND.

26           MR. ALLEN:  IF YOU WOULDN'T MIND, BECAUSE WE WERE

27   BROUGHT IN LATE ON THIS, I WOULD LET MR. WOHRLE HANDLE THIS.

28           THE COURT:  THAT'S FINE.

1          MR. WOHRLE:  THANK YOU, YOUR HONOR.  WITH REGARD TO THE

2    BOND, YOUR HONOR, ONE OF THE FACTORS THAT IS CONSIDERED WITH

3    RESPECT TO THE BOND IS THE COST OF DEFENSE THAT MAY BE

4    RECOVERED AGAINST THE SURETY IN THE CASE ON THE OFF CHANCE

5    THAT THE PRELIMINARY INJUNCTION WAS IMPROVIDENTLY GRANTED, AND

6    I THINK IN A CASE LIKE THIS -- WE'RE UP TO VOLUME 8, MAYBE

7    9 -- THE DEFENSE COSTS WILL BE ENORMOUS.  JUST ON THAT BASIS

8    ALONE, I WOULD ESTIMATE PROBABLY HALF A MILLION DOLLARS, AND

9    THAT DOESN'T EVEN INCLUDE THE AMOUNT OF DAMAGE THAT MY CLIENT

10   WOULD SUFFER IF THE PRELIMINARY INJUNCTION IS IMPROVIDENTLY

11   GRANTED.  SPECIFICALLY, FOR EXAMPLE, ONE OF THE THINGS THAT

12   MR. BILLER WOULD BE ENJOINED FROM, IF THE PRELIMINARY

13   INJUNCTION IS GRANTED, IS PUBLICIZING HIS C.V. AND HIS RESUMÉ

14   AND THE FACT THAT HE USED TO WORK FOR TOYOTA.  IF MR. BILLER

15   IS --

16          THE COURT:  THAT'S NOT COVERED BY THE INJUNCTION.  HE

17   CAN TELL PEOPLE WHO -- I DOUBT THERE'S ANYONE LEFT IN THE

18   UNITED STATES WHO DOESN'T KNOW HE WORKED FOR TOYOTA.

19          MR. WOHRLE:  PROBABLY NOT NOW.

20          THE COURT:  NOT NOW.  BUT HE CAN -- THE INJUNCTION IS

21   NOT TO PROHIBIT HIM FROM PUBLICIZING THAT HE WORKED FOR TOYOTA

22   OR FOR THAT -- OR TO PROHIBIT HIM FROM DISTRIBUTING HIS RESUMÉ

23   OR C.V.  THAT'S NOT COVERED BY THE TERMS OF THE ORDER TO SHOW

24   CAUSE.

25          MR. WOHRLE:  IT DEPENDS WHAT THE RESUMÉ OR C.V. MIGHT

26   CONTAIN.  FOR EXAMPLE, IF THE RESUMÉ OR C.V. CONTAINS

27   SOMETHING THAT'S A MATTER OF PUBLIC RECORD, FOR EXAMPLE, THAT

28   MR. BILLER APPEARED IN COURT AND TRIED A CASE SUCCESSFULLY FOR

1   TOYOTA, LET'S SAY, IN TEXAS, WHICH IS A MATTER OF PUBLIC

2   RECORD, I BELIEVE THAT IS SOMETHING THAT TOYOTA IS ATTEMPTING

3   TO ENJOIN.   IT'S ONE THING FOR A LAWYER TO SAY, "I USED TO BE

4   A PARTNER AT PILLSBURY WINTHROP.   PLEASE, LET ME BE YOUR

5   CONSULTANT."   IT'S ANOTHER THING FOR A LAWYER TO SAY THAT

6   PLUS, "I TRIED 12 CASES TO CONCLUSION WITHIN 36 MONTHS AND WON

7   THEM ALL.   HERE THEY ARE.   PLEASE HIRE ME AS YOUR CONSULTANT."

8                SO MR. BILLER IS, ESSENTIALLY, DEPRIVED FROM

9   EARNING A LIVELIHOOD AT THIS TIME BY VIRTUE OF THE INJUNCTIVE

10  RELIEF THAT TOYOTA IS SEEKING.   AND, YOU KNOW, YOUR HONOR,

11  THEY MAY BE RIGHT.   THEY MAY GO TO TRIAL, AND THEY MAY WIN,

12  AND THEY MAY GET A PERMANENT INJUNCTION, BUT THEY MIGHT NOT.

13  AND IF THEY DON'T, OUR CLIENT IS GOING TO BE OUT A LOT OF

14  MONEY.

15                SO JUST FOR THOSE REASONS, IF YOU ADD THE

16  POTENTIAL LOSS OF EARNINGS PLUS THE DEFENSE COST, A MILLION

17  DOLLARS REALLY IS A CONSERVATIVE ESTIMATE, AND THAT

18  REQUIREMENT IS MANDATORY UNDER C.C.P. 520, YOUR HONOR.   AND

19  THEY HAVEN'T EVEN ARGUED IT.

20          THE COURT:   NOR HAVE YOU.   THAT'S WHY MAYBE IT'S FOR

21  ANOTHER DAY.   I MEAN, YOU JUST DID, BUT I MEAN IT'S NOT IN THE

22  PAPERS.

23          MR. WOHRLE:   THAT'S TRUE, YOUR HONOR, BUT BOND

24  REQUIREMENT ISN'T WAIVED EVEN IF THE DEFENDANT DOESN'T BRING

25  IT UP.

26          THE COURT:   TRUE.

27          MR. LLAGUNO:   YOUR HONOR, THE BOND IS REQUIRED IF

28  ORDERED BY THE COURT BUT NOT AUTOMATICALLY REQUIRED, AND THE

1    PARTY REQUESTING THE PRELIMINARY INJUNCTION HAS TEN DAYS TO

2    COMPLY WITH THE COURT'S ORDER ORDERING THE BOND.  WE'VE HAD NO

3    SUCH ORDER IN THIS CASE.  AND YOUR HONOR WAS CORRECT.  WE HAD

4    PRELIMINARILY BRIEFED THE ISSUE OF THE ORDER TO SHOW CAUSE.

5    YOUR HONOR HAD SET AN ORDER TO SHOW CAUSE BASED ON TOYOTA'S

6    PRELIMINARY SUBMISSION.  AND WE ARE HERE TODAY ON THE HEARING

7    ON THAT ORDER TO SHOW CAUSE.

8         THE COURT:  ANYTHING ELSE?

9         MR. WOHRLE:  I JUST HAVE TO DISAGREE ON THE LAW,

10   YOUR HONOR.  C.C.P. 529(A) SAYS -- AND I QUOTE -- "ON GRANTING

11   AN INJUNCTION, THE COURT OR JUDGE MUST REQUIRE AN

12   UNDERTAKING" --

13        THE COURT:  YOU'RE RIGHT.  IT'S GOT TO BE A BOND.

14        MR. WOHRLE:  THERE HAS TO BE.  PRECISELY.

15        THE COURT:  WE'RE JUST DISCUSSING WHAT THE AMOUNT IS.

16        MR. WOHRLE:  RIGHT.  BUT I THOUGHT I HEARD COUNSEL SAY

17   IT'S NOT ALWAYS REQUIRED.

18        THE COURT:  I DON'T KNOW IF HE SAID THAT.  HE'S NOT

19   RIGHT IF HE SAID THAT.

20        MR. WOHRLE:  VERY GOOD.

21        THE COURT:  ANYTHING ELSE?

22        MR. LLAGUNO:  NO, YOUR HONOR.

23        THE COURT:  ANYTHING ELSE?

24        MR. ALLEN:  NO, YOUR HONOR.

25        THE COURT:  SUBMITTED?

26        MR. WOHRLE:  SUBMITTED.

27        MR. ALLEN:  SUBMITTED.

28        MR. LLAGUNO:  SUBMITTED, YOUR HONOR.

1       THE COURT:  OKAY.  AS TO THE PRELIMINARY INJUNCTION,

2    FIRST LET ME SAY AS A PRELIMINARY MATTER ON THE PRELIMINARY

3    INJUNCTION, THE CASE ON WHICH THE DEFENDANT, MR. BILLER,

4    RELIES PRIMARILY, STATE FARM FIRE AND CASUALTY COMPANY VS.

5    SUPERIOR COURT 54 CAL. APP. 4TH, 625 -- ALTHOUGH MR. BILLER

6    SAYS I HAVEN'T READ IT, I'VE READ IT MANY TIMES.  IN FACT,

7    HERE IT IS.  THESE ARE MY POST-ITS INDICATING THAT I HAVE READ

8    IT -- IT DOES NOT SUPPORT MR. BILLER.

9       FIRST OF ALL, THE CASE SAYS THAT SOME

10   ATTORNEY-CLIENT COMMUNICATIONS WERE PRIVILEGED, OTHERS WERE

11   NOT.  YOU HAVE TO GO BY A CASE-BY-CASE BASIS WHICH IS WHAT WE

12   HAVE DONE IN THIS LITIGATION EXHAUSTIVELY.  MORE IMPORTANT OR

13   AS IMPORTANT, THE INDIVIDUAL INVOLVED -- IS IT ZUNIGA?

14   Z-U-N-I-G-A -- WAS NOT AN ATTORNEY.  IT DIDN'T INVOLVE HIS OR

15   SOMEONE'S WORK PRODUCT.  AT LEAST HE WASN'T AN ATTORNEY.

16   THERE WAS NO ISSUE OF WORK PRODUCT THAT I COULD SEE.  AND THE

17   COURT ACTUALLY SAYS ON PAGE 642 WHERE MY SECOND POST-IT IS,

18   THAT THE COMMUNICATION WITH AN IN-HOUSE ATTORNEY WAS

19   PRIVILEGED, PROTECTED BY ATTORNEY CLIENT PRIVILEGE.

20       SO THAT CASE IS VERY DISTINGUISHABLE FROM THIS

21   CASE.  THE COURT FINDS IN THIS CASE JUST AS A MATTER OF

22   PRELIMINARY INJUNCTION AND PROVISIONAL RELIEF, TOYOTA HAS

23   SHOWN A PROBABLE SUCCESS ON THE MERITS, CERTAIN IRREPARABLE

24   HARM, AND THAT THE EQUITIES WEIGH STRONGLY IN FAVOR OF TOYOTA,

25   AND THE COURT SO FINDS.

26       I DO NOT THINK, HOWEVER, THE COURT CAN ENJOIN

27   MR. BILLER FROM DOING WHAT HE NEEDS TO DO, AND WHAT HE HAS TO

28   DO IN FEDERAL COURT, BUT THERE'S NOTHING WRONG WITH A

1   PRELIMINARY INJUNCTION IN THIS CASE THAT REQUIRES MR. BILLER
2   TO MAINTAIN THE CONFIDENCES OF HIS FORMER CLIENT.
3           I DO NOT KNOW WHO'S GOING TO PREVAIL IN THIS
4   DISPUTE.  THAT'S NOT FOR ME.  THAT'S FOR THE ARBITRATOR.  THE
5   PRELIMINARY INJUNCTION IS ONLY PROVISIONAL RELIEF, AND ITS
6   DURATION IS LIMITED UNTIL THE ARBITRATOR DECIDES THE CASE AND
7   THE PRELIMINARY INJUNCTION EITHER EXPIRES OR IS MERGED INTO A
8   JUDGMENT.
9           TODAY SHOULD BE THE LAST TIME THE PARTIES ARE
10  HERE UNTIL THERE'S A PETITION TO CONFIRM THE ARBITRATION
11  AWARD.
12          WHO'S THE ARBITRATOR, AGAIN?
13      MR. LLAGUNO:  HONORABLE GARY TAYLOR, YOUR HONOR.
14      THE COURT:  YOU'RE ALWAYS WELCOME HERE, BUT THERE'S NO
15  REASON FOR YOU TO BE HERE, REALLY, UNTIL THE END OF THE
16  ARBITRATION.  WELL, THERE MAY BE A MOTION ON THE BOND -- I'LL
17  GET TO THAT IN A MINUTE.  I AGREE WITH JUDGE KING, WHO'S AN
18  EXCELLENT JUDGE, THAT WHATEVER I DO TODAY IS PROBABLY FUTILE,
19  BUT THAT DOES NOT EXCUSE ME FROM FULFILLING MY DUTY OF MAKING
20  MY BEST EFFORTS TO DO WHAT IS RIGHT AND APPROPRIATE UNDER
21  CALIFORNIA LAW.
22          TOYOTA'S MOTION FOR PRELIMINARY INJUNCTION IS
23  GRANTED.  TOYOTA IS TO SUBMIT A PROPOSED ORDER CONSISTENT WITH
24  THE TEMPORARY RESTRAINING ORDER WITHIN FIVE DAYS.  THE BOND
25  WILL BE SET AT $10,000 WITHOUT PREJUDICE TO EITHER SIDE'S
26  RIGHT TO FILE A MOTION TO INCREASE OR DECREASE THE AMOUNT OF
27  THE BOND, SINCE IT REALLY HASN'T BEEN BRIEFED SO FAR.  NOTHING
28  I SAY TODAY IS WITHOUT PREJUDICE TO EITHER SIDE'S RIGHT ON

1    THAT ISSUE.

2              TOYOTA'S APPLICATIONS TO SEAL ARE GRANTED.  THE

3    COURT MAKES ALL THE EXPRESS FINDINGS UNDER RULE 2.550(D).

4              TOYOTA'S INTEREST IN PROTECTING ITS

5    ATTORNEY-CLIENT PRIVILEGED INFORMATION AND ITS WORK PRODUCT

6    OVERRIDES THE RIGHT OF PUBLIC ACCESS TO TOYOTA'S PRIVILEGED

7    INFORMATION.  I'LL NOTE SO THAT THE REVIEWING COURT KNOWS,

8    MUCH OF THE INFORMATION IN THE FILE IS NOT SEALED.  I DON'T

9    KNOW WHAT VOLUME THIS IS.  COULD BE NINE OR TEN.  THERE ARE

10   EIGHT OTHER VOLUMES OF STUFF.  THERE'S A LOT OF STUFF THAT'S

11   NOT SEALED.  THE PUBLIC HAS FREE ACCESS TO ALL OF THAT PLUS

12   EVERYTHING THAT'S GOING ON IN FEDERAL COURT, EVERYTHING ON THE

13   INTERNET, WHICH I HAVEN'T SEEN.

14             THE PUBLIC HAS ACCESS TO THE FILES IN

15   MR. BILLER'S OTHER ACTIONS.  I THINK THERE'S AT LEAST TWO,

16   MAYBE THREE.

17             THE CRIME-FRAUD EXCEPTION DOESN'T APPLY BECAUSE

18   MR. BILLER IS DISCLOSING FIRST AND SEEKING COURT APPROVAL OR

19   PERMISSION SECOND, AND APPARENTLY WILL CONTINUE TO DO SO.

20   ALSO MR. BILLER IS NOT USING THE CRIME-FRAUD EXCEPTION IN THIS

21   CASE TO PROTECT HIMSELF OR THE PUBLIC BUT FOR HIS PERSONAL

22   FINANCIAL GAIN IN CARRYING ON HIS BUSINESS WHICH HE WAS DOING

23   AT THE BEGINNING OF THE LITIGATION.  I DON'T KNOW IF HE'S

24   DOING IT NOW.

25             ALSO TOYOTA'S OVERRIDING INTEREST SUPPORTS

26   SEALING OF THE PRIVILEGED PORTIONS OF THE RECORD IN THIS CASE,

27   AND WHERE IT DOESN'T SO OVERRIDE THE RECORD HAS NOT BEEN

28   SEALED.  THERE HAVE BEEN REPORTERS HERE LOOKING AT ALL KINDS

1      OF STUFF THAT'S NOT SEALED.

2              THERE IS A SUBSTANTIAL PROBABILITY THAT

3      TOYOTA'S INTEREST IN PROTECTING THE WORK PRODUCT OF ITS LEGAL

4      DEPARTMENT WILL BE PREJUDICED IF THE PRIVILEGED AND WORK

5      PRODUCT INFORMATION IS NOT SEALED IN THIS CASE.

6              THE PROPOSED SEALING HAS BEEN PAINSTAKINGLY AND

7      EXHAUSTIVELY NARROWLY TAILORED.  LOOK AT THE COURT'S

8      JANUARY 14, 2009, ORDER.  IT IS AS NARROWLY TAILORED AS

9      POSSIBLE, AT LEAST AS NARROWLY TAILORED AS I COULD DO IT.

10     AND, AGAIN, MUCH OF THE INFORMATION IN THE FILE IS NOT SEALED,

11     AND THE PUBLIC HAS FREE ACCESS TO THAT.

12             FINALLY, THIS IS THE LEAST RESTRICTIVE MEANS

13     POSSIBLE.  THAT'S THE PRELIMINARY INJUNCTION.  ON THE ORDER TO

14     SHOW CAUSE, WHETHER MR. BILLER HAS VIOLATED THE CALIFORNIA

15     RULES OF PROFESSIONAL CONDUCT THAT GOVERN ATTORNEYS IN THE

16     STATE IS NOT FOR ME TO DETERMINE.  THAT'S FOR THE STATE BAR TO

17     DETERMINE, JUST LIKE THE MERITS OF THIS CASE ARE NOT FOR ME TO

18     DETERMINE.  THAT'S FOR THE ARBITRATOR.

19             THE STATE BAR MAY DECIDE THERE HAVE BEEN NO

20     VIOLATIONS AT ALL.  IT IS MY OPINION THAT MR. BILLER HAS

21     VIOLATED THE RULES OF PROFESSIONAL CONDUCT AND THE BUSINESS

22     AND PROFESSIONS CODE AND HAS DONE SO INTENTIONALLY AND FOR

23     PERSONAL GAIN.

24             MR. BILLER DISCLOSED ATTORNEY-CLIENT

25     INFORMATION AND INFORMATION PROTECTED BY THE WORK PRODUCT

26     WHICH HE DOES NOT OWN -- TOYOTA'S LEGAL DEPARTMENT DOES -- AND

27     HE HAS USED IT FOR HIS PERSONAL PROFIT, HIS ATTEMPTED PROFIT.

28     I DON'T KNOW IF HIS BUSINESS TURNS IN A PROFIT.

1          THIS CASE, AS OPPOSED TO THE FEDERAL CASES, HAS

2    NOTHING TO DO WITH PROTECTING THE PUBLIC FROM DANGER.  THIS

3    CASE HAS TO DO WITH MR. BILLER'S USE OF PROTECTED INFORMATION

4    TO EARN MONEY FOR HIMSELF, BUT I DON'T DECIDE THAT.  THAT'S

5    FOR THE STATE BAR AND THE ARBITRATOR.

6          IT IS MY OPINION THAT MR. BILLER HAS NOT

7    VIOLATED THE RULES OF PROFESSIONAL CONDUCT AND THE BUSINESS

8    AND PROFESSIONS CODE BY HIS FILINGS IN FEDERAL COURT.  THE

9    FEDERAL RULES OF CIVIL PROCEDURE REQUIRE MR. BILLER TO DO

10   CERTAIN THINGS, I GUESS, THROUGH HIS ATTORNEYS.

11         THE TWO OF YOU REPRESENT HIM IN FEDERAL COURT;

12   RIGHT?

13        MR. ALLEN:  CORRECT.

14        THE COURT:  THE FEDERAL COURT HAS MADE AND WILL

15   CONTINUE TO MAKE ORDERS, AND WE ALL HAVE TO COMPLY WITH THEM,

16   EVEN ME.  I'M AT THE BOTTOM OF THE JUDICIAL FOOD CHAIN.  I

17   DON'T THINK THAT HE VIOLATES ANY RULES OF THE STATE BY DOING

18   WHAT THE FEDERAL RULES AND THE FEDERAL JUDGES REQUIRE HIM TO

19   DO, BUT I DON'T DECIDE THAT.  THE STATE BAR DECIDES THAT AND

20   THE ARBITRATOR.

21         AND, FINALLY, IN TERMS OF DUE PROCESS, THIS

22   COURT, FROM WHAT I UNDERSTAND FROM READING OVER THE RULES,

23   DOESN'T HAVE TO GIVE AN ATTORNEY ANY NOTICE AT ALL, IF THE

24   ATTORNEY MAY HAVE COMMITTED ETHICAL VIOLATIONS, BEFORE ASKING

25   THE STATE BAR TO INITIATE AN INQUIRY.

26         SIMILARLY, WHEN THE COMMISSION ON JUDICIAL

27   PERFORMANCE -- IF THEY DECIDE TO INVESTIGATE A JUDGE, THEY

28   DON'T ASK FOR PERMISSION FIRST.  THEY JUST DO IT.  THE COURT

```
 1    CAN SIMPLY NOTIFY THE STATE BAR, AND THE STATE BAR CAN DO
 2    WHATEVER IT THINKS IS APPROPRIATE.  IN THIS CASE, HOWEVER,
 3    COURT GAVE MR. BILLER EXTRA DUE PROCESS, MORE THAN HE WAS DUE.
 4               I HAVE READ AND CONSIDERED EVERYTHING
 5    MR. BILLER HAS SAID AND EVERYTHING TOYOTA HAS SAID IN ITS
 6    PAPERS.  I BELIEVE I HAVE AN ETHICAL DUTY IMPOSED BY THE CODE
 7    OF JUDICIAL CONDUCT TO DETERMINE WHETHER REFERRAL TO THE STATE
 8    BAR IS APPROPRIATE.  IN THIS CASE I CHOSE TO FULFILL THAT DUTY
 9    PUBLICLY, NOT PRIVATELY, BY AT LEAST SETTING THIS ORDER TO
10    SHOW CAUSE SO EVERYONE WOULD HAVE AN OPPORTUNITY TO BE HEARD
11    BECAUSE THE OPPORTUNITY TO BE HEARD IS THE FUNDAMENTAL
12    CORNERSTONE OF OUR CIVIL AND CRIMINAL JUSTICE SYSTEM.
13               ALL RIGHT.  THOSE ARE THE RULINGS.  ON THE
14    PRELIMINARY INJUNCTION ONLY, THE PLAINTIFF IS TO LODGE AND
15    SERVE A PROPOSED ORDER WITHIN FIVE DAYS.
16               DO YOU WANT HIM TO SERVE YOU OR MR. BILLER?
17          MR. WOHRLE:  IF YOU COULD SERVE OUR OFFICE, PLEASE.
18          THE COURT:  OKAY.  YOU CAN LODGE HERE AND SERVE THERE.
19          MR. LLAGUNO:  AND THE T.R.O. REMAINS IN EFFECT, YOUR
20    HONOR, UNTIL THAT IS SERVED?
21          THE COURT:  YES.
22          MR. LLAGUNO:  OR IS IT IMMEDIATELY EFFECTIVE?
23          THE COURT:  THE T.R.O. WILL BE IN EFFECT UNTIL I SIGN
24    IT.
25          MR. WOHRLE:  AND THAT THE BOND IS POSTED?
26          THE COURT:  RIGHT.  THE BOND'S GOT TO BE POSTED.
27          MR. LLAGUNO:  WILL THERE BE A WRITTEN DECISION ON THIS?
28    A MINUTE ORDER, FOR EXAMPLE?
```

```
 1              THE COURT:  WHAT DO YOU MEAN BY "THIS."

 2         MR. LLAGUNO:  YOUR HONOR'S RULINGS THIS MORNING.

 3         THE COURT:  I DON'T KNOW.  PLAINTIFF TO GIVE NOTICE.

 4         MR. MAOZ:  THANK YOU, YOUR HONOR.

 5         MR. ALLEN:  THANK YOU, YOUR HONOR.

 6            (AT 9:21 A.M., THE MATTER WAS CONCLUDED.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                FOR THE COUNTY OF LOS ANGELES

3

DEPARTMENT WE O                HON. JOHN L. SEGAL, JUDGE

4

5

TOYOTA MOTOR SALES U.S.A., ET AL, )

6                           )

                  PLAINTIFFS,   )

7                           )

        VS.                  )  NO. SC 100501

8                           )

DIMITRIOS P. BILLER, ET AL.,    )  REPORTER'S

9                           )  CERTIFICATE

                 DEFENDANTS.   )

10     _____)

11

12

13             I, ADRIANNE THOMPSON, OFFICIAL REPORTER OF THE

14   SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF

15   LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES 1

16   THROUGH 13 COMPRISE A FULL, TRUE, AND CORRECT TRANSCRIPT OF

17   THE PROCEEDINGS TAKEN IN THE MATTER OF THE ABOVE-ENTITLED

18   CAUSE ON FRIDAY, SEPTEMBER 25, 2009.

19

20             DATED THIS  29TH  DAY OF SEPTEMBER, 2009.

21

22

23              _____, CSR NO. 12370

24                  OFFICIAL REPORTER

25

26

27

28

# EXHIBIT "F"

Motorsports Media Login

TOYOTA
USA NEWSROOM

Search Our Newsroom     Go



| Newsroom Home | Overview | Releases | Images | Video | Product Info | Pricing |

**Corporate**

About

Community /
Philanthropy

Financial

**Toyota**

**Lexus**

**Scion**

**Auto Shows**

**Manufacturing &
Engineering**

**Environmental**

**Research & Design**

**Motorsports**

**Toyota Financial Services**

**Noticias en Espanol**

**Related Sites**

www.toyota.com
www.lexus.com
www.scion.com
Canada Newsroom
Our Point of View
Toyota on Twitter
Toyota on Flickr
Toyota on YouTube
Lexus on YouTube
www.togethergreen.org

Posted to: Corporate, Toyota

# Toyota Update Regarding the Biller and Tracy Litigation

TORRANCE, Calif. (October 12, 2009) – In Los Angeles last week, Toyota moved to have the U.S. District Court dismiss the civil RICO claim that former Toyota attorney Dimitrios Biller filed against the Company as well as to compel arbitration of any remaining issues.

In its two filings, Toyota demonstrates that Mr. Biller's federal suit is "patently defective" in attempting to use the RICO Act as an "attempted end-run" around the pending California Superior Court suit brought by Toyota against him.  "Biller and his consulting company misapply RICO by dressing up an employment dispute – properly brought, if at all, under state law – as a racketeering scheme," Toyota says in its court papers.  "The RICO Act was never intended to control state law contract disputes." Toyota also points out that Mr. Biller fails to satisfy the fundamental elements required to make a claim under civil RICO, including proof of a racketeering enterprise or claims of financial harm.

In addition, Toyota's court papers state that Mr. Biller is seeking to "misuse this Court for a collateral attack on rulings issued by a California Superior Court in a pending matter involving many of the same allegations."  Toyota notes that Mr. Biller's federal suit was only filed after a series of adverse rulings in the State court, stating that "rather than respecting these orders, Biller seeks to use this Court to evade them."

Also last week, a procedural hearing in Federal Court in Marshall, Texas  on a lawsuit brought by plaintiffs' attorney Todd Tracy, which is based entirely on Mr. Biller's false accusations, was cancelled.  The scheduled hearing, which did not relate to the merits of Mr. Tracy's suit, did not take place because Mr. Tracy was satisfied with the procedures Toyota already had in place to maintain documents relevant to the case.  The parties also reached an agreement on a procedure for the handling of additional documents that Mr. Biller delivered to the Court that will provide Toyota with secure access to this material.

Commenting on the Texas suit, Toyota said, "We strongly dispute the unfounded claims in Todd Tracy's lawsuit, and we are confident that we have acted appropriately with respect to product liability litigation.  We intend to defend vigorously against this lawsuit, as well as Mr. Biller's."

This week's developments follow an important California Superior Court ruling on September 25 in connection with the Biller litigation.  Describing Mr. Biller's conduct as motivated by "personal financial gain", the Court said it would issue a preliminary injunction against Mr. Biller, converting the temporary restraining order that was already in place in the case.  The Court also stated, with respect to the case before it, that in its opinion "Mr. Biller has violated the rules of professional conduct and the business and professions code and has done so intentionally."

All of these actions stem from the lawsuit that Toyota filed in November 2008 against Mr. Biller to stop his inappropriate use of Toyota case studies and other confidential Company information in promotional materials and seminars that he presented as part of his legal education business.  Despite the Court's issuance of a restraining order against him in that case, Mr. Biller continued to disclose Toyota's information inappropriately.  In addition, the lawsuit Mr. Biller filed  in federal court in July  disclosed even more confidential information and made inaccurate and misleading claims against Toyota regarding the conduct of product liability cases.

Subscribe

RSS        Alerts

Share/Print

Our Social Media

Twitter     Lexus       Prius

Toyota      Lexus       Toyota

PR Contacts

Click to view PR Contacts

With respect to the California Superior Court's actions, Toyota said:

"We wish to underscore that Mr. Biller's allegations are both misleading and inaccurate, and hope that these rulings will help prevent Mr. Biller from continuing his false accusations against Toyota. We maintain the highest professional and ethical standards in our legal practices and remain confident that we have acted appropriately in product liability cases and in all reporting to federal safety regulators.

"In our view and in the view of the Superior Court of the State of California, Mr. Biller has repeatedly breached his ethical and professional obligations as an attorney and his commitments to us, by repeatedly and inappropriately disclosing the Company's confidential information."

**Additional Details on the Biller Litigation**

Contrary to Mr. Biller's allegations, Toyota vehicles are carefully and rigorously tested, and are all engineered to meet or exceed the high standards set by the National Highway Traffic Safety Administration (NHTSA), which is the global leader in motor vehicle safety. Among the many inaccuracies in his lawsuit, Mr. Biller has grossly mischaracterized Toyota's reporting to NHTSA. His accusations that Toyota misled NHTSA regarding roof strength standards are completely false. Contrary to his claims, there has never been any question about the completeness and accuracy of the information we have provided to product safety regulators.

The facts of the NHTSA situation cited by Mr. Biller are as follows. NHTSA has sought public comment on roof strength at various times over the past decade. In August of 2005, NHTSA announced proposed changes to Federal Motor Vehicle Safety Standard (FMVSS) 216 and requested voluntary comments from interested parties. The Alliance of Automobile Manufacturers filed comments with NHTSA on behalf of its carmaker members, which then included General Motors, Ford Motor Company, DaimlerChrysler, BMW Group, Volkswagen, Porsche, Mazda, Mitsubishi Motors and Toyota. Several manufacturers also submitted comments individually.

On November 21, 2005, Toyota filed a comment addressing certain aspects of the proposed revision to FMVSS 216. Contrary to Mr. Biller's allegation, it was the Alliance, not Toyota, that hired outside consultants to prepare supporting materials to submit with its comments to NHTSA. Toyota's comments were a realistic assessment of the structural changes and timetable required to comply with the proposed rules, and they were consistent with comments made by other manufacturers, as well as the Alliance.[1]

In this rulemaking proceeding, as in all rulemaking proceedings, NHTSA ultimately performed its own independent analysis in deciding on the content of new safety standards, including the stringency level and the lead time required for compliance.

Mr. Biller also exaggerates the incidence of roll-over litigation involving Toyota vehicles. In fact, Toyota vehicles have an excellent safety record relative to the millions of its cars on the road. While a roll-over accident can be severe, with 27 million Toyota vehicles currently in operation, roll-overs are a rare event.

Mr. Biller's actions and the timing of his lawsuit do not support his claim that he is motivated by the public interest. Rather, consistent with the view expressed by the California Superior Court, Mr. Biller's actions have been motivated by his own personal financial interests. Mr. Biller did not resign from Toyota because of ethics concerns. Instead, in making his demand for a severance package, he held open his option to return to work at Toyota as an attorney. He was also personally responsible for managing the cases cited in his lawsuit, and his actions at the time in defending those cases on Toyota's behalf are wholly inconsistent with the allegations he has now brought forward.

Mr. Biller has also sued another of his former employers, the Los Angeles County District Attorney's Office, and some employees of that office for $50 million, contending that his colleagues were conspiring to have him fired. Mr. Biller has also sued the attorney who negotiated his severance package with Toyota for legal malpractice. In court papers related to these suits, Mr. Biller claims he is disabled and has suffered from organic brain disease "for most of his life."

Since Toyota's lawsuit against Mr. Biller in the Superior Court in California and its related restraining order predate his misleading claims regarding the conduct of product liability cases, Mr. Biller cannot claim that the reason Toyota sued him was to stop the disclosures he has made in his complaint.

Toyota agreed to a severance package for Mr. Biller in order to avoid the time and expense

associated with his unsubstantiated allegations.  Severance agreements are not unusual in cases of highly compensated individuals who have had access to confidential and proprietary information.  Toyota acted honorably in agreeing to a mutually acceptable separation, but ultimately it was a mistake because Mr. Biller did not honor his obligations under the agreement.

Toyota Motor Sales, USA, Inc.
Media Contacts:

Mike Michels (310) 468 7730

Celeste Migliore (310) 468 4491
Sona Iliffe-Moon (310) 468 6721
Zoe Ziegler (310) 468 486

[1] NOTE: Toyota's initial comments regarding Mr. Biller's allegations included an incorrect statement regarding Toyota's comments directly to NHTSA.  This oversight does not change the essential facts: that Toyota did not mislead NHTSA, did not hire an outside consultant to prepare an engineering report, did not hire a second outside consultant to change a prior engineering report, and that Mr. Biller's allegations are unfounded.

©2009 Toyota Motors Sales, U.S.A., Inc.        TOYOTA | SCION | LEXUS        All information applies to U.S. vehicles only