E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re: Defendants' Motion to Compel Arbitration, Motion to Dismiss Claim for Violation of RICO Act, and Motion to Strike Claim for Injunctive Relief Under RICO**

This matter is before us on Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Christopher Reynolds, Jane Howard-Martin, Eric Taira, Dian Ogilvie, and Alicia McAndrews's (collectively, "Defendants") Motion to Compel Arbitration, Motion to Dismiss Plaintiffs Dimitrios P. Biller ("Biller") and Litigation Discovery & Trial Consulting, Inc.'s ("LDT Consulting") (collectively, "Plaintiffs") Claim for Violation of RICO Act, and Motion to Strike Plaintiffs' Claim for Injunctive Relief Under RICO. We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts in this case, we will repeat them only as necessary. Accordingly, we rule as follows.

    **I.**    **Motion to Compel Arbitration**

Under 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." The Confidential Severance Agreement and General Release of All Known and Unknown Claims ("Severance Agreement"), executed in September 2007, contains an agreement to arbitrate in Section 6. (First Amended Complaint ("FAC"), Ex. 2, § 6). Section 6.1 provides that:

> The Parties agree that the resolution of certain disputes shall be conducted exclusively through binding arbitration as set forth herein. The disputes for which arbitration is the exclusive remedy, include, but are not limited to: (1) all known and unknown claims which [Biller] may have against TMS or any other Releasee which arose at or prior to the date this Agreement is signed and is not extinguished by this Agreement, if any; (2) all known and unknown claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | | Date | November 17, 2009 |
|---|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | | |

[Biller] may have against TMS or any other Releasee that in any way relate to the subject matter, interpretation, application, or alleged breach of this Agreement arising at any time prior to, concurrently with or subsequent to [Biller's] signing this Agreement; and (3) any known or unknown claims that [Biller] may have against TMS or any other Releasee which arise at any time after [Biller] signs this Agreement as well as the arbitrability of any dispute (collectively, 'Arbitrable Claims').

Section 3 of the Severance Agreement defines "TMS Releasees" to include "TMS and/or its parents (Toyota Motor North America Inc. and its parent Toyota Motor Corporation), and each of them and/or its or their present and past subsidiaries, divisions, business units, related corporations, affiliated entities, shareholders, board members, officers, directors, co-venturers, partners, insurers, employees ('associates') . . . ." Each of the corporate and individual Defendants named in the above-captioned action is captured by this definition and may therefore enforce the agreement to arbitrate, if it is valid and enforceable. Biller is clearly a party to the Severance Agreement. However, LDT Consulting is a non-signatory. Under *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), a non-signatory may be compelled to arbitrate a dispute on the basis of "ordinary contract and agency principles[,]" including: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id*. at 1101 (citations omitted). As we herein dismiss LDT Consulting's civil RICO claim, its sole claim against Defendants, *see infra*, we need not consider whether LDT Consulting is Biller's alter ego.

  Biller brings the following claims against Defendants: (1) a civil RICO claim; (2) constructive wrongful termination in violation of public policy; (3) intentional infliction of emotional distress; and (4) defamation per se. (FAC 1). Each of these claims is arbitrable under the Severance Agreement. Biller's claim for constructive wrongful termination clearly "relate[s] to the subject matter, interpretation, application, or alleged breach of [the Severance] Agreement[.]" (FAC, Ex. 2, § 6.1). The claim for intentional infliction of emotional distress is likewise arbitrable, as the FAC alleges that it arose after Biller signed the Severance Agreement, and it appears to relate to Defendants' "interpretation" and "application" of the Severance Agreement in enforcing the confidentiality clause. (FAC ¶¶ 113-16). Claim four for defamation per se is arbitrable under the third category for claims that arose after the execution of the Severance Agreement. Finally, the inartfully pled civil RICO claim, which covers a wide range of purported "racketeering activity" is clearly arbitrable, as it constitutes a claim against various Releasees that arose either prior to, concurrent with, or subsequent to the Severance Agreement's execution. (FAC ¶¶ 89-106). RICO claims may be submitted to arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 224 (1987).

  Biller argues that the Severance Agreement is invalid and unenforceable due to: (1) Biller's mental incapacity at the time of execution; and (2) the confidentiality clause which purportedly renders the entire Agreement illegal and against public policy. (Opp'n 4-12). 9 U.S.C. § 2 provides that: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4 authorizes us to compel arbitration if we are "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" The question is whether this Court or the arbitrators may decide Biller's challenges. Under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), "if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language [of the Federal Arbitration Act ('FAA')] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id*. at 403-404. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court reaffirmed that "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" must be decided by the arbitrators. *Id*. at 449. Significantly, the Court also stated that "whether the challenge at issue would render the contract voidable or void" is irrelevant to this determination. *Id*. at 448 ("It is true . . . that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void."). *Buckeye* also directed that the trial court must ascertain whether the "crux of the complaint" challenges the contract as a whole or specifically the agreement to arbitrate. *Id*. at 444. More precisely, the Ninth Circuit requires that "cases be submitted to arbitration unless there is a challenge to the arbitration provision which is *separate* and *distinct* from any challenge to the underlying contract." *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989). The Ninth Circuit recently reaffirmed this principle in an *en banc* decision. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1270-71 (9th Cir. 2006) (*en banc*) ("Examining the 'crux of the complaint' makes it abundantly clear that Nagrampa's challenge goes specifically, and only, to the arbitration clause."). The court engaged in extensive review of the circuit case law on point and concluded that:

> Our sister circuits also examine the nature of claims to determine whether they are arbitrable. They hold that, where the causes of action or claims within a complaint are, in essence, an effort to invalidate the entire contract, then the federal court will send the dispute to arbitration. They also hold that where, as here, there are separate and independent claims specifically challenging enforcement of the arbitration provision, then the federal court will proceed to consider the challenge to arbitrability of the dispute.

*Id*. at 1271. The Ninth Circuit acknowledged that "[i]f Nagrampa . . . had made *only* a claim that the entire contract was invalid because it was a contract of adhesion," then that would have been a question for the arbitrators to decide. *Id*. at 1275. However, the fact that the Complaint nowhere sought the "rescission or invalidation of the entire contract" was dispositive. *Id*. at 1277.

The law is clear that a separate and distinct attack on the arbitration provision, severable from any challenge to the contract as a whole, must be made if we are to rule on the challenge. Here, the "crux of the" FAC makes clear that Biller is seeking the invalidation of the entire Severance Agreement on mental incapacity and illegality grounds. (Opp'n 4-12). Biller argues that the "Severance Agreement is unenforceable as against public policy because it is designed to keep secret Defendants' commission of crimes and frauds . . . ." (Opp'n 11-12). The basis for this claim is Biller's assertion that

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

the confidentiality clause in the Severance Agreement is an "illegal" attempt to further the concealment of evidence. (FAC ¶ 60). This is manifestly a challenge to the validity and enforceability of the Agreement as a whole, and therefore, it must be arbitrated under the *Prima Paint* line of cases. Plaintiff also challenges the Severance Agreement on the basis of his mental competence: "BILLER was not legally competent to enter into and execute the Severance Agreement because of the physical and mental disabilities from which he was suffering at the time." (FAC ¶ 57; *see also id*. ¶ 102 (repeating allegation from paragraph 57); *id*. ¶ 104 (seeking declaration that the Agreement as a whole is unenforceable)).

The above allegations and prayer for relief do not constitute a "separate and distinct" challenge to the agreement to arbitrate. Moreover, the Opposition solidifies the fact that Biller is seeking rescission or invalidation of the entire Severance Agreement on the basis of his lack of mental capacity: "the Severance Agreement is unenforceable, in part, because Plaintiff Biller was incompetent when he signed it." (Opp'n 2). In the Opposition, Biller also connects paragraphs 102 and 104, *see supra*, and states that "[e]ven Mr. Michael Faber, Mr. Biller's lawyer at the time he signed the *Severance Agreement*, questioned Mr. Biller's competence." (Opp'n 5 (emphasis added)). Though the Opposition sporadically hints at Biller's desire to challenge the agreement to arbitrate itself (*see* Opp'n 3, 5 ("[T]he issue of the making of the arbitration agreement is indeed genuine . . . .")), these statements are clearly outweighed by the assertions listed above. The "crux of the complaint" is directed towards invalidation of the Severance Agreement as a whole. We need not ponder whether a mental incapacity challenge could even potentially be specifically targeted at an agreement to arbitrate, without extending to the contract as a whole, as Biller has not so limited his attack here.

Accordingly, we hereby **ORDER** that Biller's mental incapacity and illegality challenges be submitted to arbitration in accordance with the Severance Agreement and binding case law construing the FAA. *See also Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1208-1209 (N.D. Cal. 2003) (applying *Prima Paint* to find mental capacity challenge to contract as a whole arbitrable); *Buckeye Check Cashing, Inc.*, 546 U.S. at 449 (illegality challenge as to entire contract is arbitrable). We hereby **GRANT** Defendants' Motion to Compel Arbitration as to each of Biller's four claims. Biller's claims are hereby **STAYED** pending the completion of arbitration. As the agreement to arbitrate in the Severance Agreement includes an exception for injunctive relief, we will retain jurisdiction of Biller's claims should either Party seek such relief.[1] (FAC, Ex. 2, ¶ 6.1 ("This agreement to arbitrate does not preclude either party from seeking injunctive relief in court.")). LDT Consulting's RICO claim, its only claim, is considered below in our analysis of the Motion to Dismiss.

## II. Motion to Dismiss RICO Claim and Motion to Strike Injunctive Relief Under RICO

We next consider Defendants' Motion to Dismiss the only remaining claim before us, LDT Consulting's RICO claim. The factual allegations supporting the RICO claim do not clearly distinguish

---

[1] We note that Defendants have filed a Motion for Preliminary Injunction, which has been noticed for hearing on November 23, 2009.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

between the injuries allegedly suffered by Biller and those suffered by LDT Consulting; nor do they delineate the specific actions that allegedly caused the harm to each Plaintiff. The only proffered basis for harm to LDT Consulting is Defendants' securing a temporary restraining order ("TRO") against Biller's alleged disclosure of allegedly privileged and confidential information in the California state court case, *Toyota Motor Sales, U.S.A., Inc. v. Biller*, Case No. SC100501. The FAC includes the following relevant allegations: (1) the TRO "enjoin[ed] BILLER from operating LDT Consulting"; (2) "as a result of the TRO, and the threats that TMS and its Counsel made that TMS will seek $250,000 for any and all alleged disclosures that BILLER made regarding any information that related to his employment at TMS, BILLER was forced to close down LDT Consulting"; and (3) Defendants "fil[ed] the fraudulent declarations of [Jeffrey] Katz and [Daniel] McKenzie that intentionally omitted material facts in order to obtain a TRO and shut down LDT CONSULTING[.]" (FAC ¶¶ 68, 71, 103). The litigation privilege set forth in California Civil Code § 47(b) is unavailing, as it is trumped by the Supremacy Clause with respect to all federal claims. *See Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (holding litigation immunity inapplicable in § 1983 action); *Dole Food Co. v. Gutierrez*, No. CV039416, 2004 WL 3737123, at *8 (C.D. Cal. July 13, 2004) (applying *Kimes* to RICO action). However, the *Noerr-Pennington* doctrine, which immunizes from civil liability any petitioning activity incident to the First Amendment's Petition Clause, including accessing the courts, applies to RICO claims. *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-145 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-70 (1965); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 (9th Cir. 2006) (applying *Noerr-Pennington* immunity to target of civil RICO claim).

First, the imposition of RICO liability would clearly burden Defendants' ability to seek enforcement of the Severance Agreement's confidentiality clause in state court by securing injunctive relief. Second, the TRO as well as any incidental warnings and demands prior to or concurrent with the lawsuit in state court are protected under the *Noerr-Pennington* doctrine. The TRO is a product of filing a motion with the court and is therefore clearly covered. The Ninth Circuit in *Sosa*, citing overwhelming authority in the circuits, "extend[ed] *Noerr-Pennington* immunity to litigation-related activities preliminary to the formal filing of the litigation[,]" which also embraces any warnings or threats concurrent with the litigation. *Id.* at 933-38. The court cited, *inter alia*, the decision in *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992), which stands for the proposition that "concerted threats of litigation are protected under *Noerr-Pennington*." *Id.* at 937.

We next consider Plaintiffs' argument that the "sham litigation" exception applies. Plaintiffs proffer only one basis for applying this exception–Defendants' alleged covert use of Katz and McKenzie to deliberately elicit statements from Biller revealing allegedly confidential information in violation of the Severance Agreement. (Opp'n 19-20; FAC ¶¶ 68-71; *id.* ¶ 69 ("[T]he declarations of Katz and McKenzie did not reveal that they were hired by TMS, or counsel for TMS, to secretly monitor BILLER and LDT CONSULTING, and to entrap BILLER into making statements upon which TMS could predicate an action against BILLER.")). In *Kottle v. NW. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998), the Ninth Circuit identified "three circumstances in which the sham litigation exception might apply: first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa*, 437 F.3d at 938 (citing *Kottle*, 146 F.3d at 1060) (internal citations and quotations marks omitted).

      The first two categories do not apply here, as Defendants sought the TRO for the lawful purpose of enforcing the Severance Agreement's confidentiality clause, and Defendants do not stand accused of initiating a series of suits patently without merit. Plaintiffs rely on the third option for the "sham litigation" exception. (Opp'n 19). However, Plaintiffs fail to identify any knowing fraud upon or intentional misrepresentation made to the state court. Plaintiff merely alleges that: "the declarations of Katz and McKenzie concealed at least the following material facts: (a) both Katz and McKenzie were retained by TMS, or counsel for TMS, to attend the LDT CONSULTING seminars; (b) Katz and McKenzie knowingly and intentionally asked questions of BILLER during the seminars which specifically were designed to elicit the statements upon which TMS's lawsuit is predicated; and (c) Katz and McKenzie made affirmative misrepresentations regarding their backgrounds, the purpose of their attendance at the LDT CONSULTING seminars, and level of experience as lawyers." (FAC ¶ 69). This kind of undercover investigation to test Biller's fidelity to the Severance Agreement's confidentiality provision does not constitute fraud. Had Biller wished to comply with the Agreement, he could have simply refused to answer any questions that would require him to disclose confidential information. Biller may dislike these undercover tactics, but no misrepresentations were made to the court, that would render their procurement of the TRO a sham. This comports with the case law which requires a much higher showing for the "sham litigation" exception to apply under the third prong. *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 566 F.3d 826 (9th Cir. 2009) (finding "sham litigation" exception applicable where law firm's fraudulent concealment of percolation testing from court resulted in lower valuation of land at trial).

      In this case, the Defendants' petitioning activity is clearly protected by the *Noerr-Pennington* doctrine, and the "sham litigation" exception is clearly inapplicable. *See Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, No. 07 CV 0031, 2007 WL 2088381, at *5-6 (S.D. Cal. July 17, 2007) (dismissing RICO claims as protected by *Noerr-Pennington* doctrine and not captured by the "sham litigation" exception); *Marina Point Development Assocs. v. U.S.*, 364 F. Supp. 2d 1144, 1146-47 (C.D. Cal. 2005) (same). Therefore, we hereby **GRANT** Defendants' Motion to Dismiss with respect to LDT Consulting's RICO claim. LDT Consulting's civil RICO claim is hereby **DISMISSED without leave to amend**. Though we need not consider the moot Motion to Strike the injunctive relief sought by LDT Consulting under RICO, we hereby **GRANT** the Motion to Strike, as the Ninth Circuit has held that injunctive relief is not available to a private plaintiff in a civil RICO action. *Religious Technology Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986).

      **IT IS SO ORDERED.**

                                                                          --      :      --

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5429-GHK (RZx) | Date | November 17, 2009 |
|---|---|---|---|
| Title | *Dimitrios P. Biller v. Toyota Motor Corp., et al.* | | |

Initials of Deputy Clerk        Bea